CONTINENTAL WESTERN
INSURANCE COMPANY,
Plaintiff,

v.

RELIANCE NATIONAL INDEMNITY
COMPANY, Defendant.

No. 2:99–CV–102–RL–2.

United States District Court,
N.D. Indiana,
Hammond Division.

May 8, 2001.

Mark R Smith, Smith Fisher Maas and Bishop, Indianapolis, IN, for Continental Western Insurance Company, plaintiffs.

James L Petersen, John T Murphy, Jim A O'Neal, Ice Miller Donadio and Ryan, Indianapolis, IN, for Reliance National Indemnity Company, defendants.

## ORDER

LOZANO, District Judge.

This matter is before the Court on Defendant's Motion for Summary Judgment, filed on June 5, 2000, and on Defendant's Motion to Strike, filed on August 1, 2000. For the reasons set forth below, Defendant's Motion for Summary Judgment is **GRANTED**, and Defendant's Motion to Strike is **MOOT**. The Clerk is **ORDERED** to enter judgment dismissing this case with prejudice.

### BACKGROUND

Reliance National Indemnity Company is a Wisconsin insurance company that sold an insurance policy to Robert Duling. Duling is the owner of a tractor-trailer and leased it to a company called Steel Transport Incorporated (STI). STI was insured by an Iowa insurance company, Continental Western Insurance Company. The Court's jurisdiction is based on diversity and the parties agree that Indiana law governs their dispute.

On May 16, 1994, Mr. Duling agreed to lease his tractor-trailer to STI and the parties entered into a written lease agreement. As part of that agreement both parties agreed to provide insurance coverage. The agreement states, in pertinent part, as follows:

(13) It is recognized that the Interstate Commerce Commission, and various other regulatory bodies, require the carrier under whose certificates or permits leased equipment is being operated to be responsible to the public with respect to such equipment, while same is being operated under its authority, and Lessee will file, or has on file, with the Interstate Commerce Commission and any other regulatory body having jurisdiction over its operations, evidence of insurance in such amounts as may be required by law or regulation of said agencies, and will continuously maintain in effect insurance in such amount.

Lessor shall secure, at its sole expense, insurance in the minimum amount of $ 750,000 combined single limits covering bob-tail and dead-heading on the equipment leased herein and shall furnish Lessee with a certificate naming Lessee as an additional insured thereunder. In addition, Lessor will carry, at its sole expense, its own insurance coverage on the equipment leased for collision, fire, theft and other occurrence or catastrophe.

Lessee shall furnish and may charge back to Lessor all costs of public liability, property damage, cargo and comprehensive insurance on the equipment which is the subject of the Agreement, while it is operated in the service of Lessee. In the event that Lessee charges Lessor for said aforementioned insurance costs, then the actual amount to be charged to Lessor for said insurance coverages shall be set forth in Appendix B of this Agreement. Further, in such event, Lessee shall furnish Lessor with copies of and the policy num-

bers of all such insurance policies, as well as certificates of insurance therefor containing all of the information required by 49 C.F.R. § 1057.12(j)(2). In the event that Lessee so furnishes insurance to Lessor and Lessor pays for said insurance coverage, then Lessor's responsibility to indemnify Lessee for claims or losses, as set forth above, is limited to the extent that such claims or losses are not covered by such insurance policies.

(Lease, at ¶ 13).

In addition to the tractor-trailer, the lease also required Duling to provide STI with a driver. The parties do not dispute that the driver was operating the truck under permits which were issued to STI by the Interstate Commerce Commission (ICC) when he rear-ended another car. The accident occurred while the driver was dead-heading,[1] and the two women who were injured in the crash sued Duling, STI, and the driver. Continental represented the defendants and settled the lawsuits before trial.

After settling, Continental filed a complaint for declaratory judgment, seeking reimbursement from Reliance on the grounds that it provided primary coverage for the accident under the lease agreement. In response, Reliance filed the instant motion for summary judgment claiming that Continental was solely responsible for the accident because it occurred while the truck was being operated under STI's ICC permit. In its brief, Continental agrees that ICC law fixes legal responsibility for the accident on its policy holder (STI), but claims that this does not mean that Reliance is relieved of its obligations under the lease. After the motion was fully briefed, Continental filed a sur-reply without leave of the Court. Reliance then

moved to strike the sur-reply based on the fact the Court's scheduling order did not call for one. Within its Motion to Strike, Reliance took a couple of jabs at the arguments raised in Continental's sur-reply, and the Court certainly now has enough argument before it to reach a decision. Thus, the Court will now consider the case-related arguments raised in both the sur-reply and the Motion to Strike.

*DISCUSSION*

The standards generally governing summary judgment motions are familiar. Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Nebraska v. Wyoming*, 507 U.S. 584, 590, 113 S.Ct. 1689, 123 L.Ed.2d 317 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding a motion for summary judgment, a court must read all facts in the light most favorable to the nonmovant. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505; *NUCOR Corp. v. Aceros Y Maquilas de Occidente*, 28 F.3d 572, 583 (7th Cir.1994).

The burden is on the movant to identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, which it believes demonstrate an absence of a genuine issue of material fact. *Celotex*, 477 at 323, 106 S.Ct. 2548.

---

1. "Dead-heading" refers to driving the tractor-trailer while it is empty. *Horn v. Trans-*

*con Lines, Inc.*, 7 F.3d 1305, 1307 (7th Cir. 1993).

Once the moving party has met this burden, the nonmoving party may not rest upon mere allegations but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Becker v. Tenenbaum–Hill Assoc., Inc.*, 914 F.2d 107, 110 (7th Cir.1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir.1989). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir.1988) (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

"[A] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires trial." *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir.1988); *see also Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1391 (7th Cir.1993). Therefore, if a party fails to establish the existence of an essential element of its case on which it bears the burden of proof at trial, summary judgment will be appropriate. In this situation, there can be "no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548.

Where the terms of a contract are ambiguous and uncertain, and their meaning must be determined by extrinsic evidence, their construction is a matter of fact. *Allen v. Cedar Real Estate Group, LLP*, 236 F.3d 374, 380 (7th Cir.2001); *Bicknell Minerals, Inc. v. Tilly*, 570 N.E.2d 1307, 1311 (Ind.Ct.App.1991). However, where an ambiguity occurs because of the language of the contract, and not because of extrinsic facts, its construction is a question of law to be determined by the court. *Allen*, 236 F.3d 374, 380; *First Fed. Sav. Bank v. Key Mkts., Inc.*, 559 N.E.2d 600, 604 (Ind.1990). In this case, the controversy concerns the interpretation of a lease agreement to determine whose insurance policy is primary. Because the Court does not rely on extrinsic evidence in making this determination, it will decide this issue as a matter of law.

In this case, Reliance claims that it is entitled to summary judgment because STI is solely responsible for the accident under ICC regulations by operation of law. Continental contends that legal responsibility is different from the issue of insurance primacy and that Indiana law demands that the court look past legal responsibility and decide which insurer holds primary coverage for the kind of accident that occurred.

This controversy is initially controlled by Interstate Commerce Commission (ICC) regulations. The ICC promulgates federal regulations that require lessees, such as STI, to maintain minimum levels of insurance coverage for vehicles operated in interstate commerce. *Hartford Ins. Co. v. Occidental Fire & Cas. Co.*, 908 F.2d 235, 237 (7th Cir. 1990). Federal law is satisfied by a single policy of insurance covering the lessee. *Westfield Ins. Co. v. Hanover Ins. Co.*, 9 F.3d 656, 658 (7th Cir.1993). However, in many cases, including this one, there are two policies covering the lessee. Reliance claims that where there are two policies, the lessee's (or Continental's) is primary under the ICC as a matter of law. However, the Seventh Circuit has rejected this idea, finding that ICC regulations do not automatically make the lessee's policy primary as a matter of law. *Travelers Ins. Co. v.*

Transport Ins. Co., 787 F.2d 1133, 1140 (7th Cir.1986); Occidental Fire & Cas. Co. v. International Ins. Co., 804 F.2d 983, 986 (7th Cir.1986). As long as the public is adequately protected, liability can be allocated between the insurers by private agreement or by state law. Travelers, 787 F.2d at 1140. In Indiana, Indiana Code Section 27–8–9–9 determines liability when two or more policies cover a leased vehicle. Westfield, 9 F.3d at 658.

█ While both parties agree that Indiana Code Section 27–8–9–9 applies, they disagree as to which clause applies in this case. Section 27–8–9–9 reads:

Sec. 9. (a) When a claim arises from the operation of a motor vehicle leased under a written lease agreement, if under the agreement the lessee agrees to provide coverage for damage resulting from his operation of the vehicle, then the motor vehicle insurance coverage of the lessee is primary. No claim may be made against any coverage available for the vehicle by the lessor until the limits of the motor vehicle coverage provided by the lessee for the vehicle are exhausted.

(b) When a claim arises from the operation of a motor vehicle that is used in the business of transporting property for hire and leased under a written lease agreement, if under the agreement the lessor and lessee agree as to which coverage of the parties' motor vehicle insurance is primary coverage, then the policy of insurance providing that coverage is primary and no claim may be made against any other coverage for the vehicle until the limits of that policy are exhausted.

Reliance contends that Section (a) of this statute applies to make Continental the primary insurer. It argues that Section (b) does not apply here because the lease agreement does not define which coverage is primary. Continental responds that Section (b) of this statute controls because the words "used in the business of transporting property for hire and leased under a written lease agreement" were included in the statute to cover specific situations, such as the instant one, where a truck is leased for the transportation of goods. Continental also claims that it would make no sense to apply Section (a) because it is designed to cover situations where the lessee operates the vehicle and, in this case, the truck was operated by the lessor's driver, not the lessee. Finally, Continental argues that Reliance is primarily liable under the language of the lease, pointing to the clause which states, "[l]essor shall secure, at its sole expense, insurance in the minimum amount of $ 750,000 combined single limits covering bob-tail and deadheading on the equipment leased herein . . . ."

The Seventh Circuit addressed a situation similar to this one in Westfield Insurance Co. v. Hanover Insurance Company, 9 F.3d 656 (7th Cir.1993). In that case, there were two insurance policies covering a leased truck. Id. at 656. Both policies were written as primary insurance and both insurance companies claimed that the other's policy was primary. Id. To determine the issue of insurance primacy, the court used IC 27–8–9–9(a), finding that the terms of the contract were irrelevant. Id. at 658. It stated that the IC 27–8–9–9 provides a clear outcome, namely that the lessees' insurance is primary and the lessors' insurance is secondary. Id. It reasoned that:

A statute such as § 27–8–9–9 is a simplifier, cutting through what may otherwise be exceedingly complex. Each policy may claim to be primary, or to be excess, or to be primary unless there is some other policy or unless specified

circumstances are present. Indiana decided that instead of working through the circumstances case by case it would adopt a bright line rule.... The Indiana statute has its greatest benefits precisely when the parties (and their insurers) have embarked on a complex arrangement, only partly written down and contingent on such things as what cargo was in the truck at a given instant.
*Id.*

Thus, as applied in this case, IC 27–8–9–9(a) makes Continental the primary insurer. As required by Section (a), Continental agreed to provide insurance coverage for damage arising from the operation of the leased truck. Under Indiana law as it applies to this case, it is irrelevant whether the driver of the truck was dead-heading at the time of the accident. *See McCaslin v. Insurance Co. of the State of Pennsylvania,* 605 N.E.2d 760, 761 (Ind.1993) (affirming that the lessee is liable regardless of whether the driver is bob-tailing); *Rediehs Express, Inc. v. Maple,* 491 N.E.2d 1006, 1012 (Ind.Ct.App.1986) (finding that the lessee is liable for the actions of its driver, regardless of whether the driver was acting under the lessee's instructions at the time of the accident). Section 27–8–9–9(a) assigns primary liability to Continental as the lessee's insurer. *Westfield,* 9 F.3d at 658.

Furthermore, Section (b) of IC 27–8–9–9 does not apply to this case. While the lessor agreed to provide insurance coverage for dead-heading and bob-tailing, it did not agree to provide the primary insurance for accidents that occur while the driver was dead-heading. Section (b) does not apply unless there is an agreement to provide primary insurance. There is no clear language in the lease to suggest that the lessor agreed to provide primary insurance. Thus, Section (a) applies to make Continental the primary insurer. The lim-

its of its policy were not exhausted when it settled the personal injury lawsuits, therefore, it is not entitled to seek compensation from Reliance. *See Pafco Gen. Ins. Co. v. Providence Washington Ins. Co.,* 587 N.E.2d 728, 731 (Ind.Ct.App.1992) (stating that, under § 27–8–9–9, a claim for damages cannot be made against the lessor's insurance policy until the limits of the lessee's coverage are exhausted). Accordingly, the Court finds that Continental has not presented any genuine issue of material fact on this claim and **GRANTS** Defendant's motion for summary judgment.

Because the Court reaches the above conclusion while considering the arguments in Continental's sur-reply, the Court finds the Motion to Strike **MOOT**.

*CONCLUSION*

For the reasons set forth above, the Defendant's Motion for Summary Judgment is **GRANTED** and the Defendant's Motion to Strike is **MOOT**. The clerk is **ORDERED** to enter judgment dismissing this case with prejudice.