**OLD REPUBLIC INSURANCE COMPANY, Appellant,**

v.

**RLI INSURANCE COMPANY, The Insurance Company of the State of Pennsylvania, First Specialty Insurance Corporation, Quickway Express, Inc., Michael Laux, and Debra Boboruzian, Individually and as Parent of Eric Boboruzian, deceased, and as Personal Representative of the Estate of Stanislaw Boboruzian, deceased, Appellees.**

No. 49A04–0709–CV–523.

Court of Appeals of Indiana.

June 6, 2008.

Robert W. Wright, Dean–Webster & Wright, LLP, Indianapolis, IN, Attorney for Appellant.

Mary K. Reeder, Riley Bennett & Egloff, LLP, Kimberly A. Shriver, Kopka, Pinkus, Dolin & Eads, PC, James L. Petersen, Brian J. Paul, Ice Miller LLP, Thomas W. Blessing, William N. Ivers, Stewart & Irwin, P.C., Indianapolis, IN, Ellen L. Green, Michael Resis, Julie P. Rubin, SmithAmundsen LLC, St. Charles, IL, Attorneys for Appellees.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Old Republic Insurance Company ("Old Republic") appeals the trial court's order denying Old Republic's motion for summary judgment and granting summary judgment to RLI Insurance Company ("RLI"), The Insurance Company of the State of Pennsylvania ("ISOP"), First Specialty Insurance Corporation ("First Specialty"), and Debra Boboruzian.[1] Old Republic raises two issues for our review, which we restate as the following issue: whether Indiana Code Section 27-8-9-9 [2] ("Indiana's Lease Statute" or the "Lease Statute") may be applied to determine the priority of insurance coverage between a primary insurance policy and true excess policies.

We affirm.

### FACTS AND PROCEDURAL HISTORY

On January 15, 2004, Debra was driving a 1996 Plymouth Voyager minivan on Interstate 465 in Indianapolis. Her eight-year-old son, Eric, was a rear-seat passenger. The minivan lost power and stalled on the interstate. Michael Laux, who was driving a tractor-trailer for Quickway Express, Inc. ("Quickway") as an independent contractor, collided with Debra's vehicle, killing Eric and severely injuring Debra. At the time of the accident, Laux, through his agreement with Quickway, was hauling a loaded trailer owned by The Kroger Company ("Kroger") from Kroger's Shelbyville, Indiana, distribution center to Peoria, Illinois. Laux owned the tractor involved in the collision. Debra filed suit against Laux and Quickway, alleging negli-

---

1. The trial court's summary judgment order does not mention Quickway Express, Inc., or Michael Laux, and the order styles the grant of summary judgment to Debra as a partial grant of summary judgment. However, in a supplemental appendix filed with this court, Old Republic demonstrated that no issue remained between the parties as to Old Republic's declaratory judgment action. While Debra has a separate action pending against Quickway Express, Inc. and Michael Laux, that action had no bearing on the merits of Old Republic's declaratory judgment action. Accordingly, the trial court's grant of summary judgment here is a final, appealable order. *See* Ind. Appellate Rules 2(H)(1), 5(A).

2. Indiana Code Section 27-8-9-9 describes the primary coverage of leased vehicles as follows:

    (a) When a claim arises from the operation of a motor vehicle leased under a written lease agreement, if under the agreement the lessee agrees to provide coverage for damage resulting from his operation of the vehicle, then the motor vehicle insurance coverage of the lessee is primary. No claim may be made against any coverage available for the vehicle by the lessor until the limits of the motor vehicle insurance coverage provided by the lessee for the vehicle are exhausted.

    (b) When a claim arises from the operation of a motor vehicle that is used in the business of transporting property for hire and leased under a written lease agreement, if under the agreement the lessor and lessee agree as to which coverage of the parties' motor vehicle insurance is primary coverage, then the policy of insurance providing that coverage is primary and no claim may be made against any other coverage for the vehicle until the limits of that policy are exhausted.

gence and wrongful death.[3]

Old Republic issued to Kroger[4] a "Business Auto Coverage" insurance policy ("Old Republic Policy"). *Id.* at 20. The Old Republic Policy had effective dates from January 1, 2003, to February 3, 2004, and had a $5,000,000 per-occurrence limit. In relevant part, the Old Republic Policy states as follows:

> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."
>
> * * *
>
> The following are "insureds":
>
> a. You for any covered "auto".
>
> b. Anyone else while using with your permission a covered "auto" you own, hire or borrow . . . .
>
> c. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.
>
> * * *
>
> 5. Other Insurance
>
> a. For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over

any other collectible insurance. However, *while a covered "auto" which is a "trailer" is connected to another vehicle, the Liability Coverage this Coverage Form provides for the "trailer" is:*

> *(1) Excess while it is connected to a motor vehicle you do not own.*
>
> *(2) Primary while it is connected to a covered "auto" you own.*

*Id.* at 21–22, 27 (emphasis added).

Quickway obtained four insurance policies from three insurers: RLI, ISOP, and First Specialty. RLI issued two policies to Quickway. First, RLI issued a "Commercial Auto Coverage" policy ("RLI Primary Policy"). *Id.* at 39. The RLI Primary Policy had effective dates from July 1, 2003, to July 1, 2004, and a limit of $1,000,000 with a $100,000 deductible. The RLI Primary Policy states as follows: "This Coverage Form's Liability Coverage is primary for any covered 'auto' while hired or borrowed by you and used exclusively in your business. . . ." *Id.* at 43.

In addition, RLI issued an "Excess Liability Policy," effective July 1, 2003, to July 1, 2004, with a per-occurrence limit of $2,000,000 ("RLI Excess Policy"). *Id.* at 48. The RLI Excess Policy states, in relevant part, as follows:

> Subject to the other provisions of this policy, we will pay on behalf of the insured the insured's ultimate net loss if

**3.** Debra and her husband, Stanislaw Boboruzian, filed suit individually and as parents of Eric. However, in late 2006 Stanislaw passed away. Debra is now serving as the personal representative to his estate. Their action against Laux and Quickway is scheduled for a jury trial on June 2, 2008.

**4.** Pursuant to a "Transportation Services Agreement" entered into between Quickway and Kroger, Quickway agreed to maintain "[c]omprehensive automobile liability insurance for owned, non-owned and hired vehi-

cles with limits of not less than $5,000,000 for personal injury, death, and property damage." Appellant's App. at 81, 87. That agreement also specified that "[t]he insurance must be primary coverage without right of contribution from any other Kroger insurance. Insurance maintained by Kroger is for the exclusive benefit of Kroger." *Id.* And in a separate "Vehicle Lease Agreement," Quickway leased from Kroger certain tractors and trailers, including the trailer Laux was hauling at the time of the accident. *Id.* at 99, 110.

such loss results from an occurrence insured by the policies designated in the Declarations as underlying insurance. *However, the insurance afforded by this policy shall apply: (a) only in excess of the underlying insurance;* [and] (b) only after the underlying insurance has been exhausted by payment of the limits of liability of such insurance....

\* \* \*

OTHER INSURANCE—If other insurance, whether collectible or not, is available to the insured covering a loss also covered by this policy, other than insurance that is specifically excess of the insurance afforded by this policy, the insurance afforded by this policy shall be in excess of, and shall not contribute with, such other insurance.

*Id.* at 50, 52 (emphasis added).

ISOP issued to Quickway a "Commercial Umbrella Policy" ("ISOP Umbrella Policy"). *Id.* at 54. The ISOP Umbrella Policy had effective dates from July 1, 2003, to July 1, 2004, and a per-occurrence limit of $1,000,000. Under the "Retained Limit" section of the ISOP Umbrella Policy, ISOP stated that it would cover only "that portion of damages in excess of the total of the applicable limits of insurance of the underlying policies listed in the Schedule of Underlying Insurance and the applicable limits of insurance of any other underlying insurance providing coverage to the insured...." *Id.* at 60. The ISOP Umbrella Policy also stated the following under "Other Insurance": "If other valid and collectible insurance applies to a claim or suit that is also covered by this Policy, this Policy will apply excess of the other insurance. However, this provision will not apply if the other insurance is specifically written to be excess of this Policy." *Id.* at 63. The Schedule of Underlying Insurance identified the RLI Primary Policy and the RLI Excess Policy, along with other policies not at issue here.

First Specialty also issued an "excess liability policy" to Quickway for the period of July 1, 2003, to July 1, 2004 ("First Specialty Excess Policy"). *Id.* at 71. The First Specialty Excess Policy had a $1,000,000 per-occurrence limit and stated that it applied only "in excess of the limits of 'Underlying Insurance,'" which the policy identified as the ISOP Umbrella Policy. *Id.* at 71–73.

After the accident, in January of 2006, Old Republic filed a declaratory judgment action against RLI, ISOP, First Specialty, Quickway, Laux, and the Boboruzians. Old Republic sought a judicial determination of the priority of coverage afforded to Laux and Quickway. Motions for summary judgment were filed, and, after a hearing, the trial court issued the following order ("Order"):

THE INSURANCE POLICIES AT ISSUE

1. The Old Republic policy is a primary policy that provides excess coverage only by operation of the policy's "other insurance" provision.

2. The RLI excess policy, the ISOP umbrella policy and the First Specialty excess policy are true excess or umbrella policies.

APPLICATION OF INDIANA CODE SECTION 27–8–9–9

1. Indiana Code [S]ection 27–8–9–9 does not apply to determine the priority of coverage as between a primary policy and a true excess or umbrella policy. *Monroe Guar. Ins. Co. v. Langreck,* 816 N.E.2d 485 (Ind.Ct. App.2004).

2. In addition, Old Republic has not designated evidence sufficient to demonstrate that the "lease" arrangement between Kroger and Quickway falls

within the scope of Indiana Code [S]ection 27–8–9–9 in the first instance, for the following reasons:

a. The trailer at issue is not a "motor vehicle" for purposes of [S]ection 27–8–9–9;

b. The evidence designated by Old Republic in support of its motion for summary judgment is insufficient to demonstrate that a "written lease agreement" was in effect with respect to the trailer at issue on the date of the accident;

c. The Vehicle Lease Agreement between Kroger and Quickway did not require Quickway's coverage to be primary as required by [S]ection 27–8–9–9(b);

d. The Transportation Services Agreement designated by Old Republic ... is not a "written lease agreement" for purposes of [S]ection 27–8–9–9 ...;

e. The evidence designated by Old Republic ... is insufficient to demonstrate that the Transportation Services Agreement was in effect on the date of the accident.

CHOICE OF LAW

* * *

2. Because the "lease" arrangement between Kroger and Quickway has not been demonstrated to fall within the scope of Indiana Code [S]ection 27–8–9–9, the statute does not apply.

3. Even if the "lease" arrangement ... fell within the scope of Indiana Code [S]ection 27–8–9–9, the statute does not apply to determine the priority of coverage between a primary policy and a true excess or umbrella policy. *Monroe Guar. Ins. Co. v. Langreck,* 816 N.E.2d 485 (Ind.Ct.App.2004).

* * *

6) The priority of coverage is as follows:
   a) RLI primary policy;
   b) Old Republic policy;
   c) RLI excess policy;
   d) ISOP umbrella policy;
   e) First Specialty excess policy.

*Id.* at 14–15. This appeal ensued.

**DISCUSSION AND DECISION**

Our standard of review for summary judgment appeals is well established. *Asbestos Corp., Ltd. v. Akaiwa,* 872 N.E.2d 1095, 1096 (Ind.Ct.App.2007) (citing *Owens Corning Fiberglass Corp. v. Cobb,* 754 N.E.2d 905, 908 (Ind.2001)). An appellate court faces the same issues that were before the trial court and follows the same process. *Id.* The party appealing from a summary judgment decision has the burden of persuading the court that the grant or denial of summary judgment was erroneous. *Id.* When a trial court grants summary judgment, we carefully scrutinize that determination to ensure that a party was not improperly prevented from having its day in court. *Id.*

Summary judgment is appropriate only if the pleadings and evidence sanctioned by the trial court show that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* (quoting *Cobb,* 754 N.E.2d at 909). On a motion for summary judgment, all doubts as to the existence of material issues of fact must be resolved against the moving party. *Id.* Additionally, all facts and reasonable inferences from those facts are construed in favor of the nonmoving party. *Id.* If there is any doubt as to what conclusion a jury could reach, then summary judgment is improper. *Id.* However, summary judgment is especially appropriate in the context of contract and statutory in-

terpretation because their constructions are questions of law. *See, e.g., Von Hor v. Doe,* 867 N.E.2d 276, 278 (Ind.Ct.App. 2007), *trans. denied.*

■ Old Republic asserts that the trial court erred in determining the priority of the insurance policies by not applying Indiana's Lease Statute. We find that issue dispositive and, therefore, need not address Old Republic's further assertions as to whether the court erred in its grant of summary judgment to RLI, ISOP, First Specialty, Quickway, Laux, and Debra (hereinafter referred to collectively as "the Excess Insurers").[5]

As an initial matter, the following is not disputed by any of the parties: that the RLI Primary Policy is the policy with first priority; that the RLI Excess Policy, the ISOP Umbrella Policy, and the First Specialty Excess Policy are in that order of priority; and that Laux and Quickway are covered insureds under each of the policies at issue, including the Old Republic Policy. The only issue disputed by the parties is whether the Old Republic Policy is second in priority, as the trial court held, or whether it is last in priority, as Old Republic contends.

Old Republic asserts that Indiana's Lease Statute applies and mandates that the Old Republic Policy is last in priority. Indiana's Lease Statute provides as follows:

(a) When a claim arises from the operation of a motor vehicle leased under a written lease agreement, if under the agreement the lessee agrees to provide coverage for damage resulting from his operation of the vehicle, then the motor vehicle insurance coverage of the lessee is primary. No claim may be made against any coverage available for the vehicle by the lessor until the limits of the motor vehicle insurance coverage provided by the lessee for the vehicle are exhausted.

(b) When a claim arises from the operation of a motor vehicle that is used in the business of transporting property for hire and leased under a written lease agreement, if under the agreement the lessor and lessee agree as to which coverage of the parties' motor vehicle insurance is primary coverage, then the policy of insurance providing that coverage is primary and no claim may be made against any other coverage for the vehicle until the limits of that policy are exhausted.

Ind.Code § 27–8–9–9 (2004). In response, the Excess Insurers assert the Lease Statute applies only between insurance policies on the same level. That is, they argue that, here, the Old Republic Policy is, by its plain terms, a primary policy, while the RLI Excess Policy, the ISOP Umbrella Policy, and the First Specialty Excess Policy are, by their plain terms, policies for excess coverage. Accordingly, they continue, the Lease Statute cannot be used to place the Old Republic Policy last in the chain of priority.

Whether Indiana's Lease Statute applies only between insurance policies on the same level is a question of first impression. In reviewing a statute:

---

5. Quickway and Laux did not file appellee's briefs. And in addition to the dispositive issue, Old Republic argues: (1) that the trial court erroneously determined that the evidence was insufficient to prove that the Transportation Service Agreement and the Vehicle Lease Agreement were in effect at the time of the accident, as required for the operation of the Lease Statute; and (2) that, even if those agreements were not clearly in effect, a genuine question of material fact as to whether those documents were in effect precluded summary judgment. Both of those issues assume the operation of Indiana's Lease Statute.

we endeavor to determine [and] effect the intent of the legislature. We examine and interpret a statute as a whole, giving words their common and ordinary meaning and not overemphasiz[ing] strict, literal or selective readings of individual words. The legislative intent as ascertained from the whole prevails over the strict, literal meaning of any word or term used therein.

*Nolan v. State,* 863 N.E.2d 398, 402 (Ind. Ct.App.2007) (quoting *Ind. Patient's Comp. Fund v. Anderson,* 661 N.E.2d 907, 909 (Ind.Ct.App.1996), *trans. denied), trans. denied.* Provisions of the Indiana Code do not stand alone; the statutes complement each other and must be applied harmoniously. *Horseman v. Keller,* 841 N.E.2d 164, 168 (Ind.2006) (quoting *Freeman v. State,* 658 N.E.2d 68, 70 (Ind. 1995) ("Where two statutes address the same subject, they are *in pari materia,* and we strive to harmonize them where possible.")).

As noted above, the Old Republic Policy prioritizes its coverage in its "Other Insurance" section, stating that "the Liability Coverage this Coverage Form provides for the 'trailer' is: (1) Excess while it is connected to a motor vehicle you do not own. (2) Primary while it is connected to a covered 'auto' you own." Appellant's App. at 27. In contrast, the RLI Excess Policy, the ISOP Umbrella Policy, and the First Specialty Excess Policy each cover only the amount required "in excess" to "underlying policies." *See id.* at 50 (RLI Excess

Policy), 60 (ISOP Umbrella Policy), 73 (First Specialty Excess Policy). In legalese, the Old Republic Policy is "an essentially primary policy made excess by a nonownership clause," whereas the other policies at issue here are "true" excess or umbrella policies. *See Monroe Guar. Ins. Co. v. Langreck,* 816 N.E.2d 485, 492 (Ind. Ct.App.2004) (quoting *Liberty Mut. Ins. Co. v. Harbor Ins. Co.,* 603 A.2d 300, 302 (R.I.1992)).

In *Monroe Guaranty,* this court recognized the "practically universal rule" that "a true excess insurance policy is secondary in priority to a primary insurance policy, even with respect to an incident for which the primary policy purports to make itself excess." *Id.* The primary insurer in *Monroe Guaranty* attempted to avoid the priority of its coverage by relying on Indiana's Owner's Statute, Indiana Code Section 27–8–9–7. That statute states that, in certain circumstances, the insurance provided by a vehicle's owner is primary even though the vehicle is used by an insured permittee.[6] We denied the primary insurer's request to render its policy secondary to a true excess policy:

A number of courts and commentators have described the differences between primary policies and umbrella policies. "First, an umbrella policy, in contrast to a primary policy that contains another insurance clause, has been recognized as providing unique and special coverage." *Illinois Emcasco Ins. Co. [v. Cont'l Cas.*

---

6. Indiana's Owner's Statute states:

(a) This section does not apply to cases covered by section 10 or 11 of this chapter.
(b) In any case arising from a permittee's use of a motor vehicle for which the owner of the vehicle has motor vehicle insurance coverage, the owner's motor vehicle insurance coverage is considered primary if both of the following apply:

(1) The vehicle, at the time damage occurred, was operated with the permission of the owner of the motor vehicle.
(2) The use was within the scope of the permission granted.
(c) The permittee may not recover under any other motor vehicle insurance coverage available to the permittee until the limit of all coverage provided by the owner's policy is first exhausted.

Ind.Code § 27–8–9–7 (2004).

Co., 139 Ill.App.3d 130, 93 Ill.Dec. 666, 487 N.E.2d 110, 112 (1985) ]. "Umbrella or catastrophe coverage has been defined as 'a needed form of coverage which picks up, above the limits of all other contracts, such as automobile and homeowners coverages, to give the security and peace of mind so necessary today where jury verdicts, or court awards, may be very substantial, to discharge the unexpected, but potentially bankrupting, judgment.'" Id. (quoting 8A Appleman, Insurance Law and Practice, § 4906, at 348 (1981)). The premiums charged for umbrella coverage as opposed to primary coverage generally also reflects the different function served by umbrella policies. Id. The language of a particular policy and its description of coverage are also relevant in distinguishing between primary and umbrella policies. See id.

\* \* \*

[An Arizona statute similar in all relevant respects to the Indiana Owner's Statute] had apparently been enacted:

> to address the conflict between policies that cover an insured individual using a non-owned vehicle and policies that insure the vehicle and whoever is driving it, each with language limiting coverage when "other insurance" covers the accident. The legislature obviously wanted to break the tie between *policies providing the same layer of protection* by establishing a presumptive rule as to who pays first. There is no reason to conclude that the legislature even contemplated umbrella policies—true excess policies that provide a different layer of coverage—when it enacted [the statute].

[Am. Fam. Mut. Ins. Co. v. Cont'l Cas. Co., 200 Ariz. 119, 23 P.3d 664, 667 (Ct.App.2001) ], (citations omitted) (emphasis added).

This reasoning persuades us, especially in light of our earlier discussion regarding the differences between umbrella and primary policies and the expectations of insurers and insureds with respect to umbrella policies in particular. It is clear the legislature in enacting the Owner's Statute wished to simplify coverage disputes where competing primary insurers have conflicting "other insurance" clauses that threaten to leave an injured party without access to insurance coverage for an accident. We do not think the statute was intended to force an umbrella insurer to pay ahead of a primary insurer. . . .

Established precedent and scholarly commentary provide[ ] that in coverage priority disputes between a primary insurer that purports to be excess in limited circumstances and an insurer who issues a true excess or umbrella liability policy, the umbrella policy is always excess to the essentially primary policy. . . . The Indiana Owner's Statute was clearly intended to resolve coverage disputes caused by competing primary insurers' "other insurance" clauses and is inapplicable to this case.

Id. at 494, 498–99 (third alteration in original).

■ Indiana's Owner's Statute and Indiana's Lease Statute are *in pari materia*. They are both part of Indiana's Primary Motor Vehicle Insurance Coverage Act. See I.C. §§ 27–8–9–5 to –11. They each provide statutory tiebreakers for determining the priority of insurance coverage in circumstances where the priority of coverage might not otherwise be immediately clear. See Monroe Guar., 816 N.E.2d at 498–99. The only difference of note between the statutes is the circumstances to which they apply: application of

Indiana Code Section 27–8–9–7 requires a permittee's use of an automobile, and application of Section 27–8–9–9 requires the operation of a leased motor vehicle. We are not persuaded that that difference is significant or sufficient to ignore our holding in *Monroe Guaranty* that, "in coverage priority disputes between a primary insurer that purports to be excess in limited circumstances and an insurer who issues a true excess or umbrella liability policy, the umbrella policy is always excess to the essentially primary policy." *Id.* at 498. And because we endeavor to read different provisions of the Indiana Code harmoniously, we hold that Indiana's Lease Statute, like Indiana's Owner's Statute, applies only to determine priority between insurance policies providing the same level of coverage. *See Horseman*, 841 N.E.2d at 168; *Monroe Guar.*, 816 N.E.2d at 498–99.

Nonetheless, Old Republic maintains that there are a number of "different considerations" between Indiana Code Section 27–8–9–7 and Indiana Code Section 27–8–9–9, which require that we disregard our decision in *Monroe Guaranty*. Appellant's Brief at 23. In particular, Old Republic argues: (1) the Owner's Statute and the Lease Statute "involve fundamentally different types of parties[,] ... [and that,] [w]here commercial parties agree as to the allocation of insurance coverage between them, Ind.Code § 27–8–9–9 will enforce that agreement," *id.* at 26; (2) that Quickway and Kroger agreed, in a separate Transportation Service Agreement, to have Quickway's insurance as the primary coverage; (3) that Indiana's Lease Statute "is not limited to one primary policy of the lessee but applies to the lessee's [total] coverage[,] ... [which] must be exhausted before Laux and Quickway may make any claim for coverage ... provided by Kroger through the Old Republic Policy," *id.* at 24–25; (4) that *Monroe Guaranty* is inapposite because the primary insurance policy in that case was specifically identified as underlying insurance by the excess insurance policy, unlike the facts here; and (5) "failure to apply Ind.Code § 27–8–9–9 to excess and umbrella policies would lead to an absurd result contrary to the expectations of the parties," *id.* at 26.

We are not persuaded by Old Republic's attempts to diminish the import of our holding in *Monroe Guaranty*. Old Republic's first, second, and third arguments, as outlined above, assume the application of the Lease Statute and/or separate agreements required for the operation of that statute. However, because we hold that the Lease Statute does not apply on these facts, we need not consider those arguments.[7] Regarding Old Republic's fourth argument, while it may be correct that the Excess Insurers here did not specifically identify the Old Republic Policy as underlying insurance, unlike the excess insurer in *Monroe Guaranty*, our holding in *Monroe Guaranty* was not based on or limited to that fact. *See Monroe Guar.*, 816 N.E.2d at 498–99. And fifth, we are not convinced that the failure to apply the Lease Statute to these facts would lead to an unjust or absurd result. To the contrary, applying the Lease Statute to prioritize the Excess Insurers' policies over Old Republic's primary policy would be absurd.[8] *See id.* at 498 ("including umbrella

---

7. As stated above in note five, the operation of the Lease Statute requires the Transportation Service Agreement and/or the Vehicle Lease Agreement to be in effect. *See* I.C. § 27–8–9–9.

8. It might be true that Old Republic expected Quickway's excess policies to be given priority over the Old Republic Policy. But that expectation alone is insufficient to ignore the "practically universal" rule that excess policies are always secondary to primary policies, or to ignore "the expectations of those issuing

policies within the definition of 'motor vehicle insurance coverage' for purposes of the Owner's Statute ... would lead to an absurd result contrary to the expectations of those issuing and purchasing umbrella insurance policies.").

Finally, Old Republic maintains that a Seventh Circuit opinion and an order from the United States District Court for the Northern District of Indiana interpret Indiana's Lease Statute to apply between policy levels. Again, we cannot agree with Old Republic's analysis. In *Westfield Insurance Co. v. Hanover Insurance Co.*, 9 F.3d 656 (7th Cir.1993), the Seventh Circuit did discuss Indiana's Lease Statute. However, the facts of that case are markedly different from the facts here: "Each policy is written as primary insurance. Each provides that if some other policy supplies primary insurance, then it becomes excess insurance." *Westfield Ins. Co.*, 9 F.3d at 656. And the same is true of the district court's order, where "both parties agree[d] that Indiana Code Section 27–8–9–9 applie[d]." *Cont'l W. Ins. Co. v. Reliance Nat'l Indem. Co.*, 141 F.Supp.2d 968, 972 (N.D.Ind.2001). Accordingly, neither of those federal decisions sheds any light on the application of Indiana's Lease Statute to insurance policies providing different levels of coverage.

In sum, we hold that Indiana Code Section 27–8–9–9 applies only to determine the priority of coverage between or among policies affording the same level of coverage. Here, the Old Republic Policy provides primary coverage, while the RLI Excess Policy, the ISOP Umbrella Policy, and the First Specialty Excess Policy each offer true excess coverage. *See Monroe Guar.*, 816 N.E.2d at 492 (quoting *Liberty Mut. Ins. Co.*, 603 A.2d at 302). Thus, the Lease Statute cannot be applied to prioritize the Excess Insurers' policies ahead of

and purchasing umbrella insurance policies."

the Old Republic Policy. The trial court did not err in holding that Indiana Code Section 27–8–9–9 is inapplicable to Old Republic's declaratory judgment action and in granting summary judgment to the Excess Insurers.

Affirmed.

DARDEN, J., and BROWN, J., concur.

*See Monroe Guar.*, 816 N.E.2d at 492, 498.