

IN THE

# Court of Appeals of Indiana



FILED
Jun 30 2025, 9:23 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

Erie Insurance Exchange,

*Appellant*

v.

State Farm Mutual Automobile Insurance Company,

*Appellee*

---

June 30, 2025

Court of Appeals Case No.
24A-CT-2747

Appeal from the Howard Superior Court

The Honorable Matthew J. Elkin, Judge

Trial Court Cause No.
34D01-2302-CT-417

---

**Opinion by Judge Pyle**
Judges Bradford and Kenworthy concur.

**Pyle, Judge.**

## Statement of the Case

Erie Insurance Exchange ("Erie") and State Farm Mutual Insurance Company ("State Farm") were the two remaining defendants providing underinsured motorist coverage for an accident that occurred in Kokomo, Indiana. Each insurance company believed that the terms of its respective policy required that the other provide primary coverage before the other would be required to pay. After both insurance companies filed motions for partial summary judgment, the trial court issued an order denying Erie's motion and granting partial summary judgment for State Farm. We reverse and remand.

## Facts

Lawrence Ricketts ("Ricketts") is a mechanic who owned an automotive repair shop called Automotive Specialists LLC ("Automotive Specialists"). Ricketts had an automotive insurance policy that provided coverage for Automotive Specialists through Auto-Owners Insurance Company ("Auto-Owners"). The policy provided by Auto-Owners did not provide any underinsured motorist coverage. Ricketts also had a personal automotive insurance policy through State Farm, and the State Farm policy provided underinsured motorist coverage.

Sometime in September 2021, Randy Tinsley ("Tinsley") brought his Dodge Ram truck to Automotive Specialists for repairs. Tinsley's truck was covered

by an automotive policy provided by Erie. Tinsley's Erie policy provided underinsured motorist coverage.

[4] On September 8, 2021, Ricketts drove the truck to another repair shop to check its alignment. Before he arrived, Ricketts was struck and injured by a Honda Civic driven by Jacob Reiter ("Reiter"). Apparently, Reiter had stopped at a stop sign, but disregarded oncoming traffic, and proceeded through the intersection striking the truck Ricketts was driving. The Honda was insured by Progressive Insurance Company ("Progressive").

[5] On February 17, 2023, Ricketts filed a complaint against Reiter and alleged that he had been injured as a direct result of Reiter's negligent act of failing to yield the right of way. Ricketts sought to be compensated for the damage and injuries he suffered as a result of the crash. On May 2, 2023, Ricketts amended his complaint, adding as defendants State Farm, Auto-Owners, and Erie. In his amended complaint, Ricketts asserted that pursuant to INDIANA CODE § 27-7-5-2 and because of the "severity and extent of [his] injuries" from the crash, Reiter "could be an underinsured motorist operating an underinsured vehicle . . . ." (App. Vol. 2 at 19). As a result, Ricketts asserts he is entitled to underinsured motorist coverage that might be available under the policies provided by the added defendants.

[6] On May 9, 2023, Ricketts filed a motion dismissing Reiter from this case, "presumably because the extent of his insurance policy" had compensated Ricketts for damages he suffered. (App. Vol. 2 at 12). The trial court granted

the motion the next day. On June 15, 2023, Auto-Owners filed its answer to the amended complaint. While denying many of the allegations, Auto-Owners acknowledged that it provided coverage under a policy issued to Automotive Specialists. However, it asserted that the policy did not provide any underinsured motorist coverage. On November 14, 2023, Ricketts filed a motion to dismiss Auto-Owners from this case, and the trial court granted his motion two days later.

[7] On Friday, April 12, 2024, Erie filed its motion for partial summary judgment. In addition, Erie filed a brief and designation of evidence supporting its motion. Erie sought a determination that State Farm's underinsured motorist "policy [wa]s primary coverage and that [Erie's] policy [wa]s secondary and excess to any amount [Ricketts] would receive from [State Farm]." (App. Vol. 2 at 46-47). On April 15, 2025, the trial court sua sponte issued an order giving the remaining parties thirty days to respond.

[8] On May 15, 2024, State Farm filed its own motion for partial summary judgment and a responsive memorandum opposing Erie's motion and supporting its own motion for partial summary judgment. State Farm argued that the language of Erie's policy provided primary coverage for damage caused by an underinsured motorist. Further, it argued that, in this instance, the general rule in Indiana was that the insurer of the vehicle's owner provided primary coverage. On May 22, 2024, Erie filed a motion to strike State Farm's response. Erie argued that State Farm's memorandum and designation of evidence were untimely filed outside of the thirty-day deadline provided by

Trial Rule 56. As a result, Erie asked the trial court not to consider State Farm's "memorandum and any materials designated by State Farm in its response." (App. Vol. 2 at 157). In response, State Farm argued that its pleadings were filed within the thirty-day window provided by the trial court. Ricketts responded to both summary judgment motions arguing that he was entitled to recovery from either or both of the policies.

[9] On August 23, 2024, the trial court held a hearing on the parties' summary judgment motions. At the hearing, Erie and State Farm argued that the language in their respective policies required that each other's policy must provide primary underinsured motorist coverage. Likewise, they also argued that the plain language in INDIANA CODE § 27-8-9-11 required the trial court to grant summary judgment in their favor. At the conclusion of the hearing, the trial court took the matter under advisement.

[10] On September 3, 2024, the trial court issued an order denying Erie's motion to strike and partial summary judgment and granting partial summary judgment in favor of State Farm. Specifically, the trial court found that the "policy tendered by [Erie] shall be first in order regarding claims made in this matter and the [State Farm] policy shall be excess for this claim." (App. Vol. 2 at 13).

[11] Erie now appeals.[1]

---

[1] We held oral argument at the Indiana Statehouse on June 20. 2025 and thank counsel for their able advocacy.

## Decision[2]

[12] Summary judgment is only appropriate "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." T.R. 56(C). We review a trial court's grant of summary judgment de novo. *Indiana Department of Insurance v. Doe*, 247 N.E.3d 1204, 1210 (Ind. 2024). When dealing with cross-motions for summary judgment, "the trial court must deal with each motion separately, construing the facts and inferences to be drawn therefrom in a light most favorable to the non-moving party." *Utica Mutual Insurance Co. v. Precedent Companies, LLC.*, 782 N.E.2d 470, 473 (Ind. Ct. App. 2003). When the facts are undisputed, "our task is to determine the law applicable to those facts, and whether the trial court properly applied it." *Id.*

[13] The interpretation of an insurance contract is primarily a question of law, and "contracts for insurance are subject to the same rules of interpretation as are other contracts." *Id.* at 474. When the contract is clear and unambiguous, we apply its plain and ordinary meaning. *Id.* "'In construing a written insurance contract, we may not extend insurance coverage beyond that provided in the contract, nor may we rewrite the clear and unambiguous language of an

---

[2] Initially, Erie argues that the trial court erred in denying its motion to strike State Farm's response, designated evidence, and partial summary judgment motion for being untimely filed. However, ruling on this issue does not prevent us from reaching the merits of this case. As a result, we elect not to address this issue. *See Mason Temple Association of Crawfordsville v. Indiana Farmers Mutual Insurance Co.*, 779 N.E.2d 21, 28 n.1 (Ind. Ct. App. 2002) *reh'g denied, trans. denied* (explaining that issues which are unnecessary to a full and fair determination of an appeal will not be addressed.).

insurance contract.'" *Id*. (quoting *American States Insurance Co, v. Adair Insurance, Inc.*, 576 N.E.2d 1272, 1273 (Ind. Ct. App. 1991)). Additionally, just because the parties may "disagree on the interpretation of the contract does not by itself establish ambiguity; instead, we will find a contract ambiguous only if it is susceptible to more than one interpretation and reasonable persons would honestly differ as to its meaning." *Id*.

[14] In most instances, Indiana law requires insurers to provide underinsured motorist coverage "in limits at least equal to the limits of liability specified in the bodily injury liability provisions of an insured's policy . . . ." *Loomis v. ACE American Insurance Co*., 244 N.E.3d 908, 913 (Ind. 2024); IND. CODE § 27-7-5-2(a). "Underinsured motorist coverage is designed to provide individuals with indemnification in the event negligent motorists are not adequately insured for damages that result from motor vehicle accidents, and it has generally been integrated into a given state's uninsured motorists legislation by modifying the definition of an 'uninsured motorist.'" *Lee v. Liberty Mutual Fire Insurance Co.*, 121 N.E.3d 639, 644-45 (Ind. Ct. App. 2019) *trans. denied*. Combined with an uninsured coverage, both coverages "serve to promote the recovery of damages for innocent victims of auto accidents with uninsured or underinsured motorists." *Id*. at 645. Considering the corrective nature of these goals, "uninsured/underinsured motorist legislation is to be liberally construed. Like all statutes relating to insurance or insurance policies, uninsured/underinsured motorist statutes are to be read in a light most favorable to the insured." *Id*. (internal citation omitted).

[15]   The relevant portion of Erie's policy[3] provides that:

> When the accident involves "**underinsured motor vehicles**," "**we**" will not pay until all other forms of insurance under all bodily injury and property damage liability bonds and insurance policies and self-insurance plan applicable at the time of the accident have been exhausted by payment of their limits.

(App. Vol. 2 at 126) (bold in original).  The relevant portion of State Farm's

policy[4] provides:

> 3.   Except as provided in item 2. above, the Underinsured Motor Vehicle Coverage provided by this policy applies as excess coverage for an *insured* who sustains *bodily injury*.
>
> a.   If:
>
>   (1)   this is the only vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Underinsured Motor Vehicle Coverage which applies as excess coverage; and
>
>   (2)   underinsured motor vehicle coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident.
>
>   then *we* will pay the proportion of damages payable as excess that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other underinsured motor vehicle coverage that apply as excess coverage.

---

[3] Erie's Uninsured/Underinsured policy provides coverage in the following amounts: Bodily injury $250,000 per person/ $500,000 per accident; Property damage $100,000 per accident with no deductible.  (App. Vol. 2 at 98).

[4] State Farm's Underinsured policy provides coverage in the following amounts: Bodily injury $250,000 per person/ $500,000 per accident.  (App. Vol. 2 at 38).

(App. Vol. 2 at 80) (bold and italics in original).

[16]   Erie argues that the plain language of both policies provides that any payment made from the underinsured motorist coverage must only be made after payment is received from any other competing policies providing underinsured motorist coverage for that same accident. As a result, Erie asserts that because the two policies conflict as to who will provide primary underinsured motorist coverage, we should look to INDIANA CODE § 27-8-9-11, Indiana's Bailee Coverage Statute, to resolve this conflict. While Erie acknowledges that there is no caselaw holding this specific statute to be a "statutory tiebreaker[]" it cites *Old Republic Insurance Co. v. RLI Insurance co.*, 887 N.E.2d 1003 (Ind. Ct. App. 2008), *reh'g denied, trans. denied*, as an example of how we resolved a conflict under a similar statutory provision. (Erie's Br. 12).

[17]   In *Old Republic*, a mother and child were in a vehicle that stalled on an Indiana interstate highway. A truck pulling a leased trailer struck the vehicle, killing the child and severely injuring the mother. The ensuing litigation revealed that there were five insurance companies, one of which was Old Republic, providing some level of coverage. Two companies, including Old Republic, provided primary coverage policies. The others provided coverage under excess or umbrella policies. A dispute arose as to the priority of coverage. Old Republic believed that Indiana's Lease Statute (IND. CODE § 27-8-9-9) placed it at the end of the list of insurers who must provide coverage. After hearing arguments on a motion for summary judgment, the trial court found that Indiana's Lease

Statute did not apply and that Old Republic was second on the list of insurers who should provide coverage.

[18] On appeal, we held that Indiana's Lease Statute, which is a part of Indiana's Primary Motor Vehicle Coverage Act (including IND. CODE § 27-8-9-5 thru 11), provides "a statutory tiebreaker[] for determining the priority of insurance coverage in circumstances where priority of coverage might not otherwise be immediately clear." *Old Republic*, 887 N.E.2d at 1009. In affirming the trial court's decision, we noted the importance of recognizing the difference between primary policies and true excess or umbrella policies. First, an umbrella policy, unlike a primary policy that contains an "other insurance" clause, is recognized as providing unique and specialized coverage. *Id*.

> Umbrella or catastrophic coverage has been defined as a needed form of coverage which picks up, above the limits of all other contracts, such as automobile and homeowners coverages, to give the security and peace of mind so necessary today where jury verdicts, or court awards, may be very substantial, to discharge the unexpected, but potentially bankrupting, judgment.

*Id*. at 1010 (internal quotation marks and citation omitted). The premiums charged, the language used, and the description of coverage are "also relevant in distinguishing between primary and umbrella policies." *Id*. Following our holding in *Munroe Guar. Ins. Co v. Langreck*, 816 N.E.2d 485, 492 (Ind. Ct. App. 2004) that a true excess policy is secondary in priority to a primary insurance policy, we held that Indiana's Lease Statute "applies only to determine the priority of coverage between or among policies affording the same level of coverage." *Id*. at 1012.

[19] In response, State Farm acknowledges authority such as *Central Mutual Insurance Co. v. Motorists Mutual Insurance Co.*, 23 N.E.3d 18 (Ind. Ct. App. 2014), *trans. denied*, for the same holding we issued in *Old Republic*, that various provisions in Indiana's Primary Motor Vehicle Coverage Act "determine priority of coverages between insurance policies providing the same level of coverage." *Central Mutual*, 23 N.E.3d at 26. However, State Farm believes that the plain language of Erie's policy shows that it "is the primary policy while the State Farm [p]olicy is excess." (State Farm's Br. 11). State Farm claims that its policy specifically uses the word 'excess' to describe the conditions under which it will not pay, while Erie's policy does not specifically use that word. Therefore, State Farm believes there is no need to apply INDIANA CODE § 27-8-9-11 as a statutory tiebreaker because "this Court is not faced with two policies both saying they are excess and offering the same level of coverage." (State Farm's Br. 13).

[20] In this case, the plain language of the policies shows that they are essentially primary policies with limited "other insurance" or excess coverage clauses. The provisions are statutorily mandated underinsured motorist provisions attached to their respective primary automotive policies. Unlike the policies in *Old Republic*, neither is a true excess or umbrella policy. As a result, the competing provisions merely state that each insurance company wants to be considered an excess or secondary payer under circumstances where other policies are available for coverage.

[21] Because the Erie and State Farm policy provisions conflict, we turn to the statutory provision that answers the question presented by the facts of this case: that is, what happens when a person drives someone else's vehicle, with the owner's permission, and an underinsured vehicle crashes into him? In those situations, we turn to Indiana's Bailee Coverage Statute, which provides the following:

> (a) This section applies to a motor vehicle while under the control of either of the following:
>
> (1) A bailee.
>
> (2) An agent or employee of a bailee.
>
> (b) As used in this section, "bailee" refers only to a person who is in the business of storing, parking, servicing, or repairing vehicles.
>
> (c) Notwithstanding section 7 of this chapter, any coverage available to the *bailee* is primary.
>
> (d) Recovery may not be made under the vehicle owner's policy until the limits of all motor vehicle insurance coverage available to the *bailee* have been exhausted.

I.C. § 27-8-9-11 (emphasis added).

[22] It is helpful to note that a bailment exists when one party "entrusts his personal property to another for a specific purpose, after which the property is to be returned." *United Farm Family Insurance Co. v. Riverside Auto Sales*, 753 N.E.2d 681, 684 (Ind. Ct. App. 2001). When the bailment is for the mutual benefit of the bailor and bailee, the bailee is responsible for the property's safekeeping and owes a duty of ordinary care to return the property. *Norris Automotive Service v. Melton*, 526 N.E.2d 1023, 1026 (Ind. Ct. App. 1988).

[23] In this case, it is undisputed that Tinsley delivered his truck to Automotive Specialists for repairs, creating a bailment. Before completing the repairs, Ricketts, the bailee, took the truck for a test drive to another service center to complete the repairs. During the drive, he was struck by another vehicle driven by Reiter who failed to yield the right of way. Tinsley's truck was damaged. Ricketts then brought this action alleging that Reiter was underinsured and that he was entitled to recover payment for injuries and damage to Tinsley's truck.

[24] After Progressive had paid its policy limits and two other insurance companies had been dismissed, Erie and State Farm remained as defendants carrying underinsured motorist policies. Erie provided a policy insuring Tinsley's truck. State Farm provided a policy covering Ricketts' personal vehicles. The policies are neither true excess nor umbrella policies but are primary policies with limited "other insurance" or excess coverage clauses. The language in the underinsured portion of each policy is unambiguous. The policies clearly indicate that, when other insurance policies are involved in the same accident, they do not want to be the primary payor. As a result, the policies conflict and we should look to Indiana's Bailee Coverage Statute. *See* I.C. § 27-8-9-11.

[25] The language in this statute is also unambiguous. First, the legislature entitled section 11 as "Bailee's coverage primary." I.C. § 27-8-9-11. Next, the statute clearly defines that it applies to circumstances where a motor vehicle is under the control of a bailee or an agent or employee of the bailee. I.C. § 27-8-9-11(a). Then, the statute states that a bailee under this statute is a person in the business of servicing vehicles, and that "any coverage *available* to the bailee is primary."

I.C. § 27-8-911(b) and (c) (emphasis added).  Finally, the statute states that recovery cannot be made from the vehicle owner's policy "until the limits of *all* motor vehicle insurance coverage available to the *bailee* have been exhausted." I.C. § 27-8-9-11(d) (emphasis added).

[26]    Applying this statute to these facts, the record reveals that Ricketts is the bailee. As such, any coverage available to Ricketts is to be primary.  Erie and State Farm provide underinsured motorist coverage.  However, Erie, which provides coverage to Tinsley, the vehicle's owner, cannot be primary until all other coverage is exhausted.  Because State Farm also provides coverage available to Ricketts, the bailee, its coverage is primary and Erie's is excess.  We therefore hold that when the Indiana legislature enacted specific priority rules for bailees under INDIANA CODE § 27-8-9-11, courts must not attempt to parse competing "other insurance" clauses that are functionally identical but use different terminology.  Instead, they are bound to follow the statute when multiple policies offering the same type of coverage conflict.  Here, we reverse the trial court's entry of partial summary judgment in favor of State Farm and, instead, order the trial court to issue an order granting Erie's motion for partial summary judgment.

[27]    We reverse and remand for further proceedings

Bradford, J., and Kenworthy, J., concur.

ATTORNEYS FOR APPELLANT

Jonathan L. Bucher
Kevin D. Lichtenberger
Schultz & Pogue, LLP
Indianapolis, Indiana


ATTORNEYS FOR APPELLEE

Mark S. Alderfer
Christopher J. Appel
Due Doyle Fanning & Alderfer, LLP
Indianapolis, Indiana