Christopher J. MARSHALL,
Appellant–Defendant,

v.

UNIVERSAL UNDERWRITERS INSUR-
ANCE COMPANY d/b/a Recreational
Products Insurance Division, Appellee–
Plaintiff.

No. 91A02–9510–CV–652.

Court of Appeals of Indiana.

Nov. 26, 1996.

Rehearing Denied Jan. 16, 1997.

David J. Theising, Joseph F. Pieters,
Christopher & Taylor, Indianapolis, for Ap-
pellant–Defendant.

Stephen J. Peters, William N. Ivers, Stew-
art & Irwin, Indianapolis, for Appellee–Plain-
tiff.

## OPINION

FRIEDLANDER, Judge.

Christopher Marshall appeals the denial of his motion for partial summary judgment and Universal Underwriters Insurance Company cross-appeals the denial of its motion for partial summary judgment. Marshall and Universal present the following restated issue:

Did Universal comply with the uninsured/underinsured motorist statute by offering and allowing Marshall to select uninsured/underinsured motorist coverage limits in amounts less than his bodily injury coverage limits?

We affirm in part, reverse in part, and remand.

The undisputed facts are that approximately on April 19, 1993, Marshall submitted to Universal an application form for a motor vehicle liability policy of insurance for his motorcycle. The relevant section of the application submitted and signed by Marshall is as follows:

| COVERAGES | * * * | | LIMITS | PREMIUMS | |
|---|---|---|---|---|---|
| | | | | UNIT 1 | UNIT 2 |
| INCREASED LIMITS LIABILITY— | (Check one) | ___ | 50/100/25 | $ ___ | $ ___ |
| (Bodily Injury & Property Damage) | | X | 100/300/25 ..... | $ 37 | $ ___ |
| | | | | | |
| UNINSURED/UNDERINSURED | (Check one) | X | 25/50 | ___ | |
| MOTORIST COVERAGE* (Bodily Injury)— | | ___ | 50/100 | ___ | |
| (Cannot exceed Bodily Injury Liability Limits) | | ___ | 100/300 ....... | $ 35 | |

* * *

---

### UNINSURED/UNDERINSURED MOTORISTS—BODILY INJURY REJECTION

I understand Uninsured/Underinsured Motorists Coverage—Bodily Injury can be purchased by me and I hereby reject this coverage.

### UNINSURED MOTORISTS PROPERTY DAMAGE REJECTION

I understand Uninsured Motorist Coverage—Property Damage can be purchased by me and I hereby reject this coverage.
 1.  ( )  I hereby reject Uninsured Motorists Coverage—Property Damage + +
OR
 2.  ( )  I hereby reject both Uninsured/Underinsured Motorists Coverage—Bodily Injury and Uninsured Motorists Coverage—Property Damage.

_____           X_____
            (Date)                                    Signature of Owner(s)

+ +You must purchase Uninsured/Underinsured Motorist Coverage—Bodily Injury if you wish Uninsured Motorist Coverage—Property Damage.

---

Marshall dated and signed the application form immediately below the statement: "I hereby warrant that the information given on both sides of this application is correct and true." *Record* at 10. Marshall did not date or sign the form in another signature space immediately below the statement: "I hereby reject both Uninsured/Underinsured Motorist Coverage—Bodily Injury and Uninsured Motorist Coverage—Property Damage." *Id.*

Thereafter, Universal issued a motor vehicle liability policy to Marshall for the period from April 23, 1993 to April 23, 1994. In April 1994, the policy was renewed under the same terms for the period from April 23,

1994 to April 23, 1995. Throughout the two-year period, Marshall paid all the premiums charged by Universal.

While driving his insured motorcycle on May 21, 1994, Marshall was struck by an automobile operated by Jose Alcantar. The medical bills for treatment of injuries sustained by Marshall in the accident exceeded $130,000. Alcantar was insured at the time of the accident by Viking Insurance Company and his policy provided bodily injury liability limits of $25,000 per person and $50,000 per accident. Viking offered to pay Marshall $25,000 on behalf of Alcantar. Marshall filed a claim against his underinsured motorist coverage for the amount of damages not paid by Viking on behalf of Alcantar. Universal denied the claim.

Universal sought a declaratory judgment regarding the rights and obligations of the parties with respect to the underinsured motorist coverage plan and Marshall counterclaimed against Universal seeking a declaratory judgment and compensatory damages. Each party moved for partial summary judgment. The trial court denied both motions and each denial was certified for interlocutory appeal pursuant to Ind. Appellate Rule 4(B)(6).

Marshall and Universal argue that the trial court erred in denying their respective motions for summary judgment on the issue of whether Universal was statutorily allowed to provide an uninsured/underinsured motorist ("UM/UMI") coverage plan that provided limits less than the bodily injury limits that Marshall selected.

An appropriate disposition of a case by summary judgment occurs when the evidence establishes that there exists no designated issue of material fact and that the movant is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Western Reserve Mut. Cas. Co. v. Holland,* 666 N.E.2d 966 (Ind.Ct.App. 1996). When reviewing a trial court's denial on a motion for partial summary judgment, the appellate court undertakes the same inquiry as the trial court and this standard of review will not change when there are cross-motions for partial summary judgment. T.R.

56(C); *Hendricks County Bank & Trust Co. v. Guthrie Bldg. Materials, Inc.,* 663 N.E.2d 1180 (Ind.Ct.App.1996). Determining the correct interpretation of a statute or contract involves a question of law that must be decided by the trial court, and as such, summary judgment is particularly appropriate. *Meridian Mut. Ins. Co. v. Auto-Owners Ins. Co.,* 659 N.E.2d 207 (Ind.App.Ct.1996).

In the instant case, Marshall and Universal seek the correct interpretation and application of Indiana's UM/UMI statute.[1] Our courts have not yet had the opportunity to address whether, pursuant to IC § 27–7–5–2, an insured may select UM/UMI coverage in limits which are less than the specified bodily injury liability limits. Therefore, this is a question of first impression in Indiana.

The UM/UMI statute has experienced several amendments, from which the applicable 1993 version provides:

Sec. 2. (a) The insurer shall make available, in each automobile liability or motor vehicle liability policy of insurance . . . the following types of coverage:

(1) In limits for bodily injury or death and for injury to or destruction of property not less than those set for in IC 9–25–4–5 [Indiana's Financial Responsibility Law] under policy provisions approved by the commissioner of insurance, for the protection of persons insured under the policy who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness or disease, including death, and for the protection of persons insured under the policy who are legally entitled to recover damages from owners or operators of uninsured motor vehicles for injury to or destruction of property resulting therefrom; or

(2) in limits for bodily injury or death not less than those set forth in IC 9–25–4–5 under policy provisions approved by the commissioner of insurance, for the protection of persons insured under the policy provisions who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehi-

---

1. Ind.Code Ann. § 27–7–5–2 (West Supp.1993).

cles because of bodily injury, sickness or disease, including death resulting therefrom.

The uninsured and underinsured motorist coverages *must be provided by insurers* for either a single premium or for separate premiums, in limits equal to the limits of liability specified in the bodily injury liability provisions of an insured's policy, *unless such coverages have been rejected in writing by the insured.* Uninsured motorist coverage or underinsured motorist coverage may be offered by an insurer in an amount exceeding the limits of liability specified in the bodily injury and property damage liability provisions of the insured's policy.

(b) The named insured of an automobile or motor vehicle liability policy has the right, in writing, to:

(1) reject both the uninsured motorist coverage and the underinsured motorist coverage provided for in this section; or

(2) reject either the uninsured motorist coverage alone or the underinsured motorist coverage alone, if the insurer provides the coverage not rejected separately from the coverage rejected.

(Emphasis supplied.) Therefore, the statute requires the insurer to make UM/UMI coverage available in each liability policy and allows the named insured to reject such coverage in writing. We must first determine what the statutory language at issue requires, then address whether the policy satisfied those requirements.

■ The purpose of the UM/UMI statute is to place the injured party in the position he or she would have been if the offending party had complied with Indiana's financial responsibility law.[2] *Hastings Mut. Ins. Co. v. Webb,* 659 N.E.2d 1049 (Ind.Ct.App.1995).

■ "The construction of a statute is only necessary where the statute is ambiguous." *Indiana Dept. of State Rev. v. Horizon Bancorp,* 644 N.E.2d 870, 872 (Ind.1994). When addressing an unambiguous statute, the only applicable rule of construction is the rule that requires words and phrases to be taken in their plain and ordinary meaning, void of any and all judicial construction. *Skrzypczak v. State Farm Mut. Auto. Ins.,* 668 N.E.2d 291 (Ind.Ct.App.1996). This statute is clear and unambiguous.

Specifically, Marshall argues that the statute requires that the insured must reject in writing UM/UMI coverage completely, or select such coverage in limits that equal or exceed the limits of bodily injury liability that are specified in the policy. Universal asserts that the statute authorizes the insured to reject underinsured motorist coverage completely, or select such coverage in limits which are greater than or less than the bodily injury limits specified in the policy.

The sections of the underinsured motorist coverage statute at issue are clear and unambiguous. There is no ambiguity in the phrases "must be provided by insurers ... unless" or "rejected in writing" and thus we need not engage in statutory construction to decide the meaning to be given.

■ The plain and ordinary meaning of the statutory language establishes that "must be provided by insurers ... unless" requires insurers to *offer* an UM/UMI coverage plan in limits equal to the limits of liability specified in the bodily injury liability provisions. It does not limit the insured's options to either (1) no coverage, or (2) limits that are equal to or exceed the limits specified in the bodily injury liability provisions. Therefore, Universal was allowed to provide Marshall an underinsured motorist coverage plan that had limits which were less then the bodily injury limits specified in his policy so long as it has *offered* equal limits.

The plain and ordinary meaning of the statutory language establishes that "reject in writing" means the insurer must affirmatively indicate in writing, rather than by spoken communication, that it is his or her choice to not accept UM/UMI coverage. In order for a rejection to be valid, it must be voluntary, because a forced rejection is contrary to the express language of the statute. *Pafco Gen.*

---

**2.** The law provides that the minimum amounts of financial responsibility are $25,000 per person and $50,000 per accident.

*Ins. Co. v. Providence Washington Ins. Co.,* 587 N.E.2d 728 (Ind.Ct.App.1992). While mandating verification of a rejection, the statute does not require use of specific, magic words.

 We now turn to Marshall's insurance policy. Marshall argues that he never rejected in writing UM/UMI coverage; the underinsured motorist coverage limits that he selected are unenforceable as contrary to law; and therefore he is entitled to underinsured motorist coverage in limits equal to the bodily injury limits specified in his policy. Our goal, when interpreting an insurance policy, is to determine and enforce the "parties' intent as manifested in the insurance contract." *American Family Mut. Ins. Co. v. National Ins. Ass'n,* 577 N.E.2d 969, 971 (Ind.Ct.App.1991).

The insurance policy issued by Universal offered Marshall the option to choose an uninsured/underinsured coverage liability plan with limits equal to or greater than the minimum limits of the financial responsibility law, or in limits equal to his chosen bodily injury liability limits, or to completely reject such coverage. Therefore, Universal was in compliance with the uninsured/underinsured motorist coverage statute.

Marshall selected the plan specifying liability limits equal to the minimum limits of the financial responsibility law, specifically, limits of $25,00 per person and $50,000 per accident. Marshall selected this plan by writing an "X" in the box next to the chosen option and signing the application. This constituted a valid rejection in writing of the underinsured motorist coverage limits equal to the limits of liability specified in the bodily injury provisions. Marshall did not sign the box offering a complete rejection of the underinsured motorist coverage, nor was such necessary in view of the fact that he did not completely reject UM/UMI coverage.

Thus, we hold that, in Indiana, the UM/UMI statute permits underinsured motorist coverage limits which are less than the limits for bodily injury specified in a policy.

The trial court did not commit reversible error when it denied the motion by Marshall for partial summary judgment. The trial court did commit reversible error when it denied the motion by Universal for partial summary judgment. We therefore remand this case to the trial court for entry of partial summary judgment in favor of Universal and for any further proceedings consistent with this opinion.

Judgment affirmed in part, reversed in part, and remanded.

SULLIVAN and RILEY, JJ., concur.