In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 16-1677

DEE FRYE and LANHUI FRYE,

*Plaintiffs-Appellants*,

*v.*

AUTO-OWNERS INSURANCE CO.,

*Defendant-Appellee*.

---

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 3:13-CV-113 — **Rudy Lozano**, *Judge*.

---

ARGUED SEPTEMBER 21, 2016 — DECIDED JANUARY 3, 2017

---

Before FLAUM, KANNE, and WILLIAMS, *Circuit Judges*.

FLAUM, *Circuit Judge*. Dee Frye was injured in a car accident caused by an underinsured driver. Frye sued his insurance company for coverage, and the parties reached a partial settlement, but Frye thought he was entitled to additional payments under the policy. The district court disagreed, and awarded summary judgment to the insurer. Frye appeals, and for the reasons that follow, we reverse the decision of the district court.

## I. Background

In January 2011, Dee Frye was seriously injured in a car accident while driving for his job. The other driver admitted responsibility for the collision, and the latter's insurance company agreed to pay Frye $100,000, the applicable per-person limit. Frye accepted the payment and offered to assign it to his lawyer and to his employer's insurer, Auto-Owners Insurance Company, from which Frye had already received $692,895.79 in workers'-compensation benefits. Auto-Owners took $75,000 of the third-party payment (in partial satisfaction of a statutory lien), and the remaining $25,000 went to Frye's attorney. *See* Ind. Code § 22-3-2-13.

Frye's injuries were also covered by two other insurance policies—a commercial automobile policy, and a commercial umbrella policy—issued by Auto-Owners to Frye's employer. The former policy required Auto-Owners to pay any compensatory damages Frye was legally entitled to recover for bodily injuries caused by an underinsured motorist, and defined the insurer's per-occurrence limit of liability as the lesser of:

(1) the difference between:

(a) the amount paid in compensatory damages … to the injured person by or for any person … who may be liable for the injured person's bodily injury; and

(b) the "each person" limit for … Underinsured Motorist Coverage stated in the Declarations [*i.e.*, $1 million]; [and]

(2) the difference between:

    (a) the total amount of compensatory damages … incurred by the injured person; and

    (b) the amount paid by or for any person … liable for the injured person's bodily injury.[1]

The latter policy afforded follow-on coverage to the automobile policy, and stated with respect to the insurer's limit of (excess) liability:

> The most we shall pay under this [umbrella policy] in any one occurrence shall not exceed the Limit of Liability shown in the Declarations for … [t]he combined coverages of Uninsured Motorist and Underinsured Motorist ….

The declarations reflected an uninsured-and-underinsured-motorist liability limit of $1 million. (The general limit for bodily injury was also $1 million when the umbrella policy was first issued in November 2007. Beginning in May 2010, however, the general limit was increased to $5 million per occurrence.) As to underinsured-motorist (or UIM) coverage in particular, the umbrella policy stated:

> For [such] coverage, our Limit of Liability shall be reduced by any amounts:

---

[1] We omit in this opinion the emphases originally included in the quoted policy provisions.

…

2) Paid or payable for the same bodily injury covered under any workers compensation or similar law; and

3) Paid by or on behalf of any person … who may be legally responsible for the bodily injury

which are in excess of the retained limit.

"Retained limit" was defined as the greater of:

(a) The highest applicable limits of liability of any and all underlying policy(ies); [and]

(b) … $500,000 for bodily injury ….

In January 2013, Frye and his wife (collectively, "Frye") sued Auto-Owners in Indiana state court, seeking payment under the aforementioned policies for damages arising from Frye's January 2011 car accident.[2] Auto-Owners removed the suit to federal court, and the parties later reached a partial settlement, through which Auto-Owners agreed to pay Frye $1,282,314.21. This amount included: $900,000 under the automobile policy ($1 million in total coverage, less $100,000 from the other motorist's insurer[3]); and $382,314.21 under the

---

[2] Frye also sued Nationwide Mutual Insurance Company, the entity that had insured the car Frye was driving at the time of the collision. Nationwide was ultimately dismissed from the case, and is not a party to this appeal.

[3] Frye claimed damages exceeding $1 million, so Auto-Owners maintained that it owed no more than $900,000 under the automobile policy—which, as already noted, capped the insurer's liability at the lesser of:

umbrella policy ($1 million in UIM coverage, less $617,685.79 in net workers'-compensation payments[4]).

Auto-Owners asserted that the settlement amount exhausted its obligations under the relevant policies, but Frye disagreed. According to Frye, Indiana statutory law required Auto-Owners to provide through its umbrella policy UIM coverage in an amount equal to the policy's general liability limit: $5 million (as of May 2010). Moreover, said Frye, the set-off for workers'-compensation payments was impermissible—both under the umbrella contract's terms, and also as a matter of Indiana public policy. The district court rejected both arguments, and awarded summary judgment to Auto-Owners. Frye appeals.

---

[the per-person limit ($1 million)]    –

[amounts paid by the liable party ($100,000)]   =   $900,000;

    and

[total damages ( > $1 million)]    –

[amounts paid by the liable party ($100,000)]   =   > $900,000.

Frye objected to this calculation before the district court, but has not renewed his objection on appeal.

[4] It is unclear how Auto-Owners obtained this figure. Frye received $692,895.79 in workers' compensation; and, as noted above, $75,000 of that amount was returned to his employer's insurance carrier (also Auto-Owners)—thus yielding a net compensation payment of $617,895.79, not $617,685.79. We also question whether the net payment amount should not also reflect (*i.e.*, be further reduced by) the $25,000 that went to Frye's attorney. *See Tunny v. Erie Ins. Co.*, 790 N.E.2d 1009, 1012, 1015–17 (Ind. Ct. App. 2003) (concluding that amounts assigned to an insured's lawyer under Indiana Code § 22-3-2-13 were not amounts retained by the insured). As Frye does not object to the insurer's calculation, however, we assume for present purposes that this calculation is correct.

## II. Discussion

We review de novo a district court's grant of summary judgment, construing all facts and drawing all reasonable inferences in favor of the non-moving party—here, Frye. *See C.G. Schmidt, Inc. v. Permasteelisa N. Am.*, 825 F.3d 801, 805 (7th Cir. 2016) (citation omitted). Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

### A. The UIM Coverage Limit

Frye argues that § 27-7-5-2 of the Indiana Code obligates insurers who provide UIM coverage to provide such coverage in amounts equal to the limits of liability for bodily injury in general. Thus, says Frye, although the umbrella policy here purported to cap Auto-Owners's UIM liability at $1 million, the statute required a UIM liability limit equal to the policy's general per-incident limit of $5 million.

Section 27-7-5-2 states:[5]

> (a) *Except as provided in subsection (d)*, the insurer shall make available, in each automobile liability or motor vehicle liability policy … insuring against loss resulting from … bodily

---

[5] Unless otherwise noted, we refer to the 2009 version of the statute, which was in effect when Auto-Owners renewed the umbrella policy for Frye's employer. Frye argued in the district court that the 2009 version did not apply here, as the umbrella policy was first issued in 2007. The district court disagreed, and Frye has abandoned the issue on appeal. The quoted language from 2009 (with one immaterial exception) still appears in the current version of § 27-7-5-2.

injury … arising from the … use of a motor vehicle, … the following types of coverage:

(1) … for the protection of persons … entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury [or] injury to or destruction of property …; or

(2) … for the protection of persons … entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury ….

The uninsured and underinsured motorist coverages must be provided by insurers … *in limits at least equal to the limits of liability specified in the bodily injury liability provisions of an insured's policy*, unless such coverages have been rejected in writing by the insured….

…

(d) *An insurer is not required to make available the coverage described in subsection (a) in a commercial umbrella or excess liability policy* ….

Ind. Code § 27-7-5-2 (emphases added). In construing a state statute, we must interpret the statute as we think the state's highest court would interpret it. *United States v. Mohamed*, 759 F.3d 798, 804 (7th Cir. 2014) (citing *Laborers Local 236, AFL-CIO v. Walker*, 749 F.3d 628, 634 (7th Cir. 2014)). Indiana courts employ the basic tools of statutory interpretation: Statutes are

read as a whole, and words are given their plain and ordinary meaning. *See id.* (explaining that the plain language of the statute is the best evidence of legislative intent) (citations omitted); *see also Ellis v. CCA of Tenn. LLC*, 650 F.3d 640, 651 (7th Cir. 2011) (same) (quoting *Estate of Moreland v. Dieter*, 576 F.3d 691, 695 (7th Cir. 2009)).

The parties agree that the plain language of § 27-7-5-2(d) exempts insurers from having to provide UIM coverage in their commercial umbrella policies. The present dispute instead turns on the *extent* to which subsection (d) creates a carve-out. Auto-Owners argues that § 27-7-5-2(d) permits insurers issuing (or renewing) commercial umbrella policies to selectively dispense with any requirements set forth in subsection (a) of that statute. In other words, not only may insurance companies abstain from providing UIM coverage in the first place, but if they do provide such coverage, they may provide it in any form they choose. In Frye's view, subsection (d) allows insurers to omit from commercial umbrella policies any UIM coverage, but if such coverage is included, it must otherwise comply with the limit-of-liability requirements set forth in subsection (a). Frye's reading is the more sensible one.

Section 27-7-5-2(d) states that insurers are not required to make available in commercial umbrella policies "the coverage described in subsection (a)." Ind. Code § 27-7-5-2(d). And subsection (a) defines "coverage" as one of two things: UIM protection against bodily injury and property damage; or UIM protection against bodily injury only. *Id.* § 27-7-5-2(a). Subsection (a) then states that these "*coverages* must be provided … in limits at least equal to the limits of liability [for] bodily injury" generally. *Id.* (emphasis added). So the limit-of-liability

requirement is modifying the "coverage" already described; the liability requirement is not part of the description itself.

Auto-Owners nevertheless insists that the liability requirement must be part of the "coverage described in subsection (a)"—and that subsection (d) therefore exempts insurers from satisfying that requirement—because this is what the Indiana legislature intended in adding subsection (d) to the statute. We disagree. Initially, § 27-7-5-2 contained no affirmative exceptions to the UIM-coverage mandate (though the insured could still reject such coverage in writing). *See* Ind. Code § 27-7-5-2 (1995). So if an insurance policy was an "automobile liability" or "motor vehicle liability" policy—the types of policies to which the statute applied, *see id.* § 27-7-5-2(a)—then Indiana law required that the policy cover all injuries caused by underinsured motorists, *see United Nat'l Ins. Co. v. DePrizio*, 705 N.E.2d 455, 457–463 (Ind. 1999) (interpreting § 27-7-5-2 to impose the UIM-coverage requirement on umbrella policies insuring against motor-vehicle-related liability). In *DePrizio*, the Indiana Supreme Court made clear that if the state legislature wished to exclude any specific types of insurance contracts from the UIM-coverage mandate, only an explicit statutory carve-out would suffice. *See id.* at 463–64. Subsection (d), which was added to the statute in 2009, effected just such an exemption for commercial umbrella policies; and, because of that exemption, insurers need not include in such contracts any UIM coverage at all. Nothing in the language of subsection (d), however, permits insurance companies—to the extent they do include UIM coverage in their commercial umbrella policies—to provide that coverage in any manner they like.

That the Indiana legislature did not intend such a result is further evidenced by later amendments to the same statute. Section 27-7-5-2(h), which appears in the current version of the statute, provides that insurers are not required to make available in personal (as distinguished from commercial) umbrella or excess liability policies "the coverage described in subsection (a)." Ind. Code § 27-7-5-2(h)(1) (2013). So subsection (h), like subsection (d), exempts insurers from having to include UIM coverage in certain types of insurance contracts. But subsection (h) also states that, where an insurer does include such coverage, the insurer "may make available the coverage *in limits determined by the insurer*," and "is *not* required to make available the coverage *in limits equal to the limits specified in the personal umbrella or excess liability policy*." *Id.* § 27-7-5-2(h)(3) (emphases added). We must therefore assume that the exception for commercial contracts in subsection (d)—which (still) contains no such language—grants no such permission. Otherwise, the permission explicitly afforded in subsection (h) would be redundant. *See, e.g., Buelna v. State*, 20 N.E.3d 137, 142 (Ind. 2014) ("We read statutes as a whole—avoiding an interpretation that makes any part of the statute superfluous." (citing *City of Carmel v. Steele*, 865 N.E.2d 612, 618 (Ind. 2007)); *Marquez v. Weinstein, Pinson & Riley, P.S.*, 836 F.3d 808, 811 (7th Cir. 2016) ("It is a cardinal principle of statutory construction that a statute ought … to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." (quoting *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001); *United States v. Michalek*, 54 F.3d 325, 335–36 (7th Cir. 1995))) (internal quotation marks omitted).

Section 27-7-5-2(d) allowed Auto-Owners to abstain from providing UIM coverage in the umbrella policy issued to

Frye's employer. Once the insurance company elected to afford such coverage, however, it was required under § 27-7-5-2(a) to provide that coverage in limits equal to or greater than the policy's general liability limit: $5 million. We thus agree with Frye that the latter limit applies here by operation of statutory law.

### B. The Workers'-Compensation Set-Off

The district court interpreted the umbrella policy to permit Auto-Owners to reduce its UIM liability limit by the amount of Frye's previous workers'-compensation payments. Frye argues that the set-off was contrary to both the contractual language and Indiana public policy. We do not reach the latter issue, as we agree with Frye that the set-off violated the contract's terms.

We generally interpret insurance policies as we do other types of contracts, though a few "specialized" rules of construction apply. *See Justice v. Am. Family Mut. Ins. Co.*, 4 N.E.3d 1171, 1176 (Ind. 2014) (citing *Holiday Hosp. Franchising, Inc. v. AMCO Ins. Co.*, 983 N.E.2d 574, 577 (Ind. 2013); *Everett Cash Mut. Ins. Co. v. Taylor*, 926 N.E.2d 1008, 1012 (Ind. 2010); *Wagner v. Yates*, 912 N.E.2d 805, 811 (Ind. 2009)). Where a policy's terms are ambiguous, for example, we construe them in favor of the insured. *See id.* (citing *Am. States Ins. Co. v. Kiger*, 662 N.E.2d 945, 947 (Ind. 1996)). We otherwise give to clear and unambiguous policy language its plain and ordinary meaning. *See id.* (citing *Am. Econ. Ins. Co. v. Motorists Mut. Ins. Co.*, 605 N.E.2d 162, 164 (Ind. 1992)); *Holiday Hosp.*, 983 N.E.2d at 577 (citing *Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664, 667 (Ind. 1997)).

Paragraph 4(b)(1)(c) of the umbrella policy provides that the insurer's limit of liability for UIM coverage "shall be reduced by any amounts":

> …
>
> 2) Paid or payable for the same bodily injury covered under any workers compensation or similar law; and
>
> 3) Paid by or on behalf of any person … who may be legally responsible for the bodily injury
>
> *which are in excess of the retained limit*.

(emphasis added). "Retained limit" is in turn defined (in paragraph 1(a)(3)) as the greater of:

> (a) The highest applicable limits of liability of any and all underlying policy(ies); [and]
>
> (b) … $500,000 for bodily injury ….

The parties agree that "the highest applicable limit" of the relevant underlying policy—*i.e.*, the automobile policy issued to Frye's employer—is $1 million, thus making $1 million (which exceeds $500,000) the "retained limit" under the umbrella contract.

Frye's workers'-compensation payments were "in excess of" this limit, argues Auto-Owners, because Frye also received $900,000 from that insurance company under the automobile policy, as well as an additional $100,000 from the underinsured motorist's own insurer. This is not quite right. Because "retained limit" is defined in the umbrella policy as simply a dollar amount (here, $1 million), the policy in effect states that Auto-Owners's liability "shall be reduced by

[workers'-compensation payments and payments made by or on behalf of the underinsured motorist] which are in excess of [$1 million]." However, the workers'-compensation payments that Frye received—even when considered in combination with the $100,000 obtained from the other motorist's insurer—did not exceed $1 million; so no portion of those payments may be subtracted from Auto-Owners's liability cap.

This is not to say that the workers'-compensation payments may never be taken into account under the umbrella contract. Paragraph 4(b)(1)(b) of that policy makes clear that coverage exists only for damages "in excess of" the retained limit and, among other things, amounts paid under any workers'-compensation laws. Thus, Auto-Owners need not pay anything under the umbrella policy unless and until Frye's compensable damages have exceeded at least $1,617,685.79 (which includes the $1 million retained limit, plus $617,685.79 in net workers'-compensation payments). Should his damages clear that threshold, Auto-Owners is liable for the difference, up to $5 million. What Auto-Owners seeks to do here is to *also* decrease that $5 million cap. But such a reduction is not permitted in this case, as explained above.

### III. Conclusion

For the foregoing reasons, we REVERSE the judgment of the district court and REMAND for further proceedings consistent with this opinion.