## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 20 2018, 8:21 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT
DIANE PROCTER-FLEECE

John P. Young
Young & Young
Indianapolis, Indiana

Edward R. Hannon
Graham T. Youngs
Steuerwald, Hannon & Witham, LLP
Danville, Indiana

ATTORNEYS FOR APPELLEE
SENTRY INSURANCE
A MUTUAL COMPANY

Dennis F. Cantrell
Cantrell, Strenski &
Mehringer, LLP
Indianapolis, Indiana

Jason R. Fathallah
Von Briesen & Roper, S.C.
Milwaukee, Wisconsin

# IN THE
# COURT OF APPEALS OF INDIANA

Diane Procter-Fleece,
*Appellant-Plaintiff,*

and

Sentry Insurance,
*Intervenor Plaintiff,*

v.

Zachary Personett, West Central Indiana Plumbing d/b/a Justin Dorsey Plumbing,

November 20, 2018

Court of Appeals Case No.
18A-PL-1000

Appeal from the Montgomery Superior Court

The Honorable Peggy Q. Lohorn, Judge

Trial Court Cause No.
54D02-1505-PL-383

*Defendants*,

and

Sentry Insurance A Mutual
Company,

*Appellee-Defendant*

**Baker, Judge.**

[1] Diane Procter-Fleece was driving her own vehicle in the course of her employment when another vehicle collided with hers. Procter-Fleece eventually filed a lawsuit against Sentry Insurance (Sentry), which was her employer's insurer, seeking underinsured motorist (UIM) coverage. The trial court granted summary judgment in favor of Sentry, finding as a matter of law that UIM coverage did not attach to Procter-Fleece's vehicle. Finding no error, we affirm.

## Facts

[2] This case stems from an automobile accident that occurred on December 17, 2013, in Hendricks County. Procter-Fleece was driving her personal vehicle, a 2010 Ford Expedition, within the scope of her employment with TEQ Solutions, Inc. (TEQ), when Zachary Personett drove through a stop sign and collided with Procter-Fleece.

[3] On May 14, 2015, Procter-Fleece filed a lawsuit against Personett. She later amended her complaint to add Personett's employer and Sentry, which was TEQ's insurer.[1] Her claim against Sentry sought UIM coverage. Eventually, Procter-Fleece settled with Personett for his policy limits and dismissed all defendants aside from Sentry.

[4] The relevant insurance policy (the Policy) covered November 1, 2013, through November 1, 2014. The Policy provides UIM coverage only for specifically described autos, which is defined as "[o]nly those 'autos' described in Item Three of the Declarations for which a premium charge is shown[.]" Appellant's App. Vol. II p. 208. Item Three initially described one vehicle, a 2008 Chevrolet Suburban, and was later changed to describe a different vehicle, a 2014 Chevrolet Camaro SS. The 2010 Ford Expedition being driven by Procter-Fleece at the time of the accident is not identified in Item Three of the Declarations or anywhere else in the Policy.

[5] Instead, the 2010 Ford Expedition falls into the Policy's "Non-owned 'Autos' Only" category, which is defined as "[o]nly those 'autos' [TEQ does] not own, lease, hire, rent or borrow that are used in connections with your business. This includes 'autos' owned by your 'employees' . . . but only while used in your business or personal affairs." *Id.* There is no UIM coverage for non-owned autos.

---

[1] Sentry also intervened as a plaintiff to protect a worker's compensation subrogation claim.

[6]     On August 15, 2017, Sentry filed a motion for summary judgment, arguing that as a matter of law, Procter-Fleece is not entitled to UIM coverage. Procter-Fleece filed a motion for partial summary judgment. Following briefing and a hearing, on April 24, 2018, the trial court entered summary judgment in favor of Sentry. Procter-Fleece now appeals.

## Discussion and Decision

[7]     Procter-Fleece argues that the trial court erred by entering summary judgment in Sentry's favor and by denying her partial summary judgment motion. Our standard of review on summary judgment is well settled:

> The party moving for summary judgment has the burden of making a prima facie showing that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Reed v. Reid*, 980 N.E.2d 277, 285 (Ind. 2012). Once these two requirements are met by the moving party, the burden then shifts to the non-moving party to show the existence of a genuine issue by setting forth specifically designated facts. *Id.* Any doubt as to any facts or inferences to be drawn therefrom must be resolved in favor of the non-moving party. *Id.* Summary judgment should be granted only if the evidence sanctioned by Indiana Trial Rule 56(C) shows there is no genuine issue of material fact and that the moving party deserves judgment as a matter of law. *Freidline v. Shelby Ins. Co.*, 774 N.E.2d 37, 39 (Ind. 2002).

*Goodwin v. Yeakle's Sports Bar and Grill, Inc.*, 62 N.E.3d 384, 386 (Ind. 2016). This case does not turn on any disputed facts; therefore, it is particularly well suited for disposal by summary judgment.

[8]     Initially, we note that it is undisputed that the Policy itself does not provide UIM coverage for Procter-Fleece's vehicle. As noted above, the Policy states that UIM coverage is provided only for specifically described autos, which included two specific vehicles, neither of which is the vehicle being driven by Procter-Fleece at the time of the accident. Procter-Fleece argues that, notwithstanding the lack of specific UIM coverage, she is entitled to such coverage because Sentry never obtained a written rejection of such coverage from TEQ.

[9]     Our analysis must begin with and turn on the language of Indiana Code section 27-7-5-2. In relevant part, that statute provides as follows:

> (a)     *Except as provided in subsections (d), (f),* and (h), the insurer shall make available, in each automobile liability or motor vehicle liability policy of insurance which is delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state, insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person and for injury to or destruction of property to others arising from the ownership, maintenance, or use of a motor vehicle, or in a supplement to such a policy, the following types of coverage:
>
>                                 ***
>
> (2)     in limits for bodily injury or death not less than those set forth in IC 9-25-4-5 under policy provisions approved by the commissioner of insurance, for the protection of persons insured under the policy provisions who are legally entitled

to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom.

\*\*\*

(b) A named insured of an automobile or motor vehicle liability policy has the right, in writing, to:

(1) reject both the uninsured motorist coverage and the underinsured motorist coverage provided for in this section; or

(2) reject either the uninsured motorist coverage alone or the underinsured motorist coverage alone, if the insurer provides the coverage not rejected separately from the coverage rejected.

. . . Following rejection of either or both uninsured motorist coverage or underinsured motorist coverage, unless later requested in writing, the insurer need not offer uninsured motorist coverage or underinsured motorist coverage in or supplemental to a renewal or replacement policy issued to the same insured by the same insurer or a subsidiary or an affiliate of the originally issuing insurer. . . .

\*\*\*

(d) The following apply to the coverage described in subsection (a) in connection with a commercial umbrella or excess liability policy, including a commercial umbrella or excess liability policy that is issued or delivered to a

motor carrier (as defined in IC 8-2.1-17-10) that is in compliance with the minimum levels of financial responsibility set forth in 49 CFR Part 387:

(1)    An insurer is not required to make available in a commercial umbrella or excess liability policy the coverage described in subsection (a).

*** 

(e)    A rejection under subsection (b) of uninsured motorist coverage or underinsured motorist coverage in an underlying commercial policy of insurance is also a rejection of uninsured motorist coverage or underinsured motorist coverage in a commercial umbrella or excess liability policy.

(f)    An insurer is not required to make available the coverage described in subsection (a) in connection with coverage that:

(1)    is related to or included in a commercial policy of property and casualty insurance described in Class 2 or Class 3 of IC 27-1-5-1; and

(2)    covers a loss related to a motor vehicle:

(A)    of which the insured is not the owner; and

(B)    that is used:

(i)    by the insured or an agent of the insured; and

(ii)    for purposes authorized by the insured.

(Emphasis added).

[10] The plain language of subsection -2(f) expressly exempts insurers from a requirement to provide UIM coverage for automobiles that are not owned by the insured but are used for purposes authorized by the insured—for example, Procter-Fleece's vehicle. *See also Gheae v. Founders Ins. Co.*, 854 N.E.2d 419, 423 (Ind. Ct. App. 2006) (observing that "[i]nsurance companies are free to limit their liability, so long as they do so in a manner consistent with public policy as reflected by case or statutory law"). Because this unambiguous statutory language states that Sentry is not required to provide UIM coverage under these circumstances, and because the Policy did not, in fact, provide such coverage, it would be illogical to require Sentry to obtain a written rejection of such coverage. It is apparent that subsection -2(b), which sets forth the requirements for rejections of coverage, applies to coverage described in subsection -2(a) that insurers are *required* to provide absent such rejection.

[11] Procter-Fleece argues that subsection -2(f) must be interpreted in conjunction with subsections -2(e) and -2(d). She maintains that (1) "an insurer *must still* obtain a written rejection from an insurer that does in fact offer commercial excess coverage—even though not required to do so—unless the consumer rejects the uninsured motorist or underinsured motorist coverage in the underlying commercial policy"; and (2) "subsection (e) modifies subsection (d),

and subsection (d) contains the *same language* as subsection (f)." Appellant's Br. p. 19-20 (emphases original).[2]

[12] We do not find this argument to be compelling. Accepting Procter-Fleece's interpretation of subsection -2(e) solely for argument's sake, we note that if the General Assembly desired for subsection -2(f) to be drafted in such a fashion, it would have done so. There is simply no indication in the plain statutory language that subsection -2(f) is modified or affected by the language of subsections -2(d) and -2(e). Indeed, whereas subsections -2(d) and -2(e) are related to one another because they both address commercial umbrella or excess liability policies, subsection -2(f) addresses something else altogether— non-owned automobiles. Therefore, we decline Procter-Fleece's invitation to read language into the statute that is not there.[3]

[13] Procter-Fleece also argues that even if Sentry was not required to "make available" UIM coverage under these circumstances, it did, in fact, make such coverage available. Therefore, a written rejection of such coverage was required. In support of her contention that Sentry made UIM coverage available, Procter-Fleece directs our attention to the Policy's schedule of coverages and covered autos. That schedule lists various types of coverages and

---

[2] Procter-Fleece directs our attention to *Frye v. Auto-Owners Ins. Co.*, 845 F.3d 782 (7th Cir. 2017), in support of her argument. As *Frye* did not relate to subsection -2(f) or the relationship between -2(e) and -2(f), however, we find it inapposite to Procter-Fleece's argument.

[3] Both parties spend time on the history of statutes governing UIM coverage in Indiana. Because we find the plain language of the relevant statute to be clear and unambiguous, we need not consider its history.

to what automobiles they apply. For example, liability coverage attaches both to the specifically described autos *and* to non-owned autos. Appellant's App. Vol. III p. 234. UIM coverage, on the other hand, was provided only to the specifically described autos. *Id.* Procter-Fleece insists that because UIM coverage was provided *at all*, it was "made available" to TEQ for non-owned autos, requiring a written rejection.

[14] We disagree. "Available" means "present or ready for immediate use." *Merriam-Webster*, *at* https://www.merriam-webster.com/dictionary/available. The plain and unambiguous language of the Policy clearly states the opposite— UIM coverage was *not* "present or ready for immediate use" for non-owned autos. That it was "made available" for certain types of vehicles does not mean that it was "made available" for all.

[15] In sum, Indiana Code section 27-7-5-2(f) clearly states that Sentry was not required to offer UIM coverage for vehicles not owned by its insured. Moreover, Sentry did not, in fact, make available such coverage. Under these circumstances, no written rejection of UIM coverage for non-owned vehicles was required. As Procter-Fleece's vehicle is a non-owned vehicle, no UIM coverage attached to that vehicle. Therefore, the trial court did not err by granting summary judgment in Sentry's favor.

[16] The judgment of the trial court is affirmed.

May, J., and Robb, J., concur.