

FILED

Apr 04 2019, 5:58 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Scott A. Faultless
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Crystal Gates Rowe
New Albany, Indiana

Casey R. Stafford
Kightlinger & Gray, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Troy Lee,

*Appellant-Plaintiff,*

v.

Liberty Mutual Fire Insurance
Company,

*Appellee-Defendant.*

April 4, 2019

Court of Appeals Case No.
18A-CT-2048

Appeal from the Delaware Circuit
Court

The Honorable Marianne Vorhees,
Judge

Trial Court Cause No.
18C01-1608-CT-107

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Plaintiff, Troy Lee (Lee), appeals the trial court's summary judgment in favor of Appellee-Defendant, Liberty Mutual Insurance Company (Liberty Mutual), concluding that Liberty Mutual is entitled to offer underinsured motorist benefits (UIM) coverage in an amount below the bodily injury liability coverage limits of the policy.[1]

We affirm.

# ISSUE

Lee presents this court with one issue on appeal, which we restate as: Whether the trial court properly granted summary judgment to Liberty Mutual when the policy's coverage of UIM benefits is in a lesser amount than the underlying liability coverage.

# FACTS AND PROCEDURAL HISTORY

On June 22, 2016, Lee was driving a Ford vehicle eastbound on State Road 32 in Delaware County, Indiana, when Jazmine Rice's (Rice) vehicle went left of center and collided into Lee's vehicle. At the time of the collision, Lee was driving his employer's vehicle insured by Liberty Mutual under an insurance policy offering $2,000,000 in bodily injury liability coverage, as well as UIM

---

[1] We held oral argument in this cause on March 18, 2019 at the Court of Appeals' courtroom in Indianapolis, Indiana. We thank counsel for their excellent advocacy.

benefits of $60,000. The parties agree that Lee was an insured under the policy, which contains the following pertinent language:

**INDIANA UNDERINSURED MOTORIST COVERAGE**

\*\*\*\*

**A. Coverage**

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "underinsured motor vehicle." The damage must result from "bodily injury" sustained by the "insured" and caused by the "accident" with an "underinsured motor vehicle."

   The owner's or driver's liability for this damage must result from the ownership, maintenance or use of the "underinsured motor vehicle."

\*\*\*\*

**F. Additional Definitions**

As used in this endorsement:

\*\*\*\*

3. "Underinsured motor vehicle" means a land motor vehicle or "trailer" for which the sum of all liability bonds or policies at the time of an "accident" provides at least the amounts required by the financial responsibility law of Indiana but their limits are either:

a. Less than the limit of liability for this coverage; or

b. Reduced by payments to others injured in the "Accident" to an amount which is less than the limit of liability for this coverage.

(Appellant's App. Vol. II, pp. 227-30).

[5] The parties do not dispute that Lee's employer executed a document, titled "Uninsured/Underinsured Motorists Coverage and Limit Options Indiana" (Election Form), in which the employer elected as follows:

> Indiana Law requires that we provide Bodily Injury Uninsured/Underinsured Motorists Coverage equal to the Bodily Injury Auto Liability Limit. Indiana Law also requires that we provide Property Damage Uninsured Motorists Coverage at the basic Financial Responsibility limit if Bodily Injury Uninsured/Underinsured Motorists Coverage is provided. You may reject these coverages.
>
> Underinsured Motorists Coverage pays for bodily injury . . . to you and your passengers as a result of an automobile accident . . . with a driver whose liability limits have been reduced by payment of claims arising from the same accident to an amount less than the limit of liability stated in your policy.
>
> ****
>
> Please indicate your choice for Bodily Injury Uninsured/Underinsured Motorists Coverage and Property Damage Uninsured Motorists Coverage by initialing next to the appropriate item below.



_____     I reject Bodily Injury Uninsured/Underinsured Motorists Coverage and Property Damage Uninsured Motorists Coverage.

__ZEY__     I select the Bodily Injury Uninsured/Underinsured Motorists Coverage and Uninsured Motorists for Property Damage at the following limit:

$60,000 single limit (We will not provide Uninsured/Underinsured Motorists Coverage higher than the policy's liability limit.)

_____     I select the Uninsured/Underinsured Motorists Coverage only for Bodily Injury at the following limit:

$_____ single limit (We will not provide Uninsured/Underinsured Motorists Coverage higher than the policy's liability limit.)

\*\*\*\*

**Insured's Acknowledgment**

By my signature, I acknowledge that I have read the above disclosure statement and offers for Uninsured/Underinsured Motorists Coverage. I have indicated whether or not I wish to purchase each coverage in the spaces provided. I understand that the above explanations of these coverages are intended to be brief descriptions of the additional coverages, and that payment of benefits under any and all coverages is subject to the terms and conditions of my insurance policy and Indiana law.

(Appellant's App. Vol. II, pp. 237-38).

[6] On August 1, 2016, Lee filed a Complaint against Rice sounding in negligence and against Liberty Mutual for UIM coverage. Lee eventually settled with Rice for $225,000—the limits of her insurance policy. However, as he claims to have sustained damages in excess of Rice's policy limits, he continued his claim against Liberty Mutual.

[7] On May 7, 2018, Lee moved for partial summary judgment against Liberty Mutual, contending Rice's vehicle was underinsured at the time of the accident because the $225,000 policy limits available to Rice's vehicle were less than the underlying $2,000,000 liability policy limits covering Lee's vehicle. Specifically, he maintains that Liberty Mutual was required to offer UIM coverage in the same amount as the bodily injury liability coverage pursuant to Ind. Code § 27-7-5-2, and therefore, Liberty Mutual was not permitted to sell UIM coverage in any amount less than the coverage amount for bodily injury. On July 13, 2018, Liberty Mutual opposed Lee's motion and filed its cross-motion for summary judgment, arguing that Rice's vehicle was not underinsured because the limits of her insurance policy were greater than the UIM limits of $60,000 purchased by Lee's employer and applicable to Lee's vehicle.

[8] On August 22, 2018, after conducting a hearing on the parties' cross-motions for summary judgment, the trial court summarily found that "the law favors" Liberty Mutual and concluded that "Liberty Mutual is entitled to offer uninsured/underinsured motorists coverage limits below the bodily injury limits specified in the policy." (Appellant's App. Vol. II, p. 13).

Lee now appeals. Additional facts will be provided if necessary.

# DISCUSSION AND DECISION

### I. *Standard of Review*

In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *First Farmers Bank & Trust Co. v. Whorley*, 891 N.E.2d 604, 607 (Ind. Ct. App. 2008), *trans. denied*. Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id*. at 607-08. In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. *Id*. at 608. A fact is 'material' for summary judgment purposes if it helps to prove or disprove an essential element of the plaintiff's cause of action; a factual issue is 'genuine' if the trier of fact is required to resolve an opposing party's different version of the underlying facts. *Ind. Farmers Mut. Ins. Group v. Blaskie*, 727 N.E.2d 13, 15 (Ind. 2000). The party appealing the grant of summary judgment has the burden of persuading this court that the trial court's ruling was improper. *First Farmers Bank & Trust Co.*, 891 N.E.2d at 607.

We observe that, in the present case, the trial court did not enter findings of fact and conclusions of law in support of its judgment. Special findings are not required in summary judgment proceedings and are not binding on appeal. *AutoXchange.com. Inc. v. Dreyer and Reinbold, Inc.*, 816 N.E.2d 40, 48 (Ind. Ct.

App. 2004). However, such findings offer this court valuable insight into the trial court's rationale for its review and facilitate appellate review. *Id.*

## II. *Analysis*

[12] Although both parties commence their argument by relying on the same statute, Ind. Code § 27-7-5-2, their interpretations are diametrically opposed. Indiana Code section 27-7-5-2 provides, in pertinent part, that:

> (a) Except as provided in subsections (d), (f), and (h), the insurer shall make available, in each automobile liability or motor vehicle liability policy of insurance which is delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state, insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person and for injury to or destruction of property to others arising from the ownership, maintenance, or use of a motor vehicle, or in a supplement to such a policy, the following types of coverage:
>
> ****
>
> The uninsured and underinsured motorist coverages must be provided by insurers for either a single premium or for separate premiums, in limits at least equal to the limits of liability specified in the bodily injury liability provisions of an insured's policy, unless such coverages have been rejected in writing by the insured. However, underinsured motorist coverage must be made available in limits of not less than fifty thousand dollars ($50,000). At the insurer's option, the bodily injury liability provisions of the insured's policy may be required to be equal to the insured's underinsured motorist coverage. * * * *

    (b) A named insured of an automobile or motor vehicle liability policy has the right, in writing, to:

        (1) Reject both the uninsured motorist coverage and the underinsured motorist coverage provided for in this section; or

        (2) Reject either the uninsured motorist coverage alone or the underinsured motorist coverage alone, if the insurer provides the coverage not rejected separately from the coverage rejected.

    ****

    (c) A rejection under subsection (b) must specify:

        (1) That the named insured is rejecting:

            (A) The uninsured motorist coverage;

            (B) The underinsured motorist coverage; or

            (C) Both the uninsured motorist coverage and the underinsured motorist coverage;

            That would otherwise be provided under the policy; and

        (2) The date on which the rejection is effective.

Indiana Code section 27-7-5-2 is a mandatory coverage, full-recovery, remedial statute. *United Nat. Ins. Co. v. DePrizio*, 705 N.E.2d 455, 460 (Ind. 1999). Underinsured motorist coverage is designed to provide individuals with indemnification in the event negligent motorists are not adequately insured for damages that result from motor vehicle accidents, and it has generally been integrated into a given state's uninsured motorist legislation by modifying the definition of an "uninsured motorist." *Id*. at 459. Together with uninsured motorist coverage, the coverages serve to promote the recovery of damages for

innocent victims of auto accidents with uninsured or underinsured motorists. *Id*. Given the remedial nature of these objectives, uninsured/underinsured motorist legislation is to be liberally construed. *Id.* Like all statutes relating to insurance or insurance policies, uninsured/underinsured motorist statutes are to be read in a light most favorable to the insured. *Id*.

[13] The statute is directed at insurers operating within Indiana and its provisions are to be "considered a part of every automobile liability policy the same as if written therein." *Id*. (citing *Ind. Ins. Co. v. Noble*, 265 N.E.2d 419, 425 (Ind. 1970)). Moreover, "[e]ven where a given policy fails to provide such uninsured motorist coverage, the insured is entitled to its benefits unless expressly waived in the manner provided by law." *Id*. Accordingly, insurers can only avoid the coverage by obtaining a written rejection from their insured. *Liberty Mut. Fire Ins. Co. v. Beatty*, 870 N.E.2d 546, 549 (Ind. Ct. App. 2007).

[14] Focusing on subsection (a), Lee maintains that an insurer is not allowed to provide primary UIM coverage in any amount less than the liability coverage. He argues that, according to the plain language of the subsection, the insurer must provide UIM limits at least equal to the limits of the liability coverage unless rejected by the insured. Turning to subsection (c), Lee then asserts that an insured can only opt out of UIM coverage by either a complete rejection of BOTH UM AND UIM coverages or a complete rejection of UM OR UIM coverage. As no partial rejection or selection of UIM coverage is permitted under the statute, Lee contends that "the selection of $60,000 UIM coverage in Liberty Mutual's Election Form was an impermissible partial rejection of UIM

coverage and contrary to Indiana Code § 27-7-5-2(b) & (c)." (Appellant's Br. p. 13).

[15] Based on the same statutory language, Liberty Mutual asserts that Rice's vehicle was not an underinsured motor vehicle because its liability policy limit of $225,000 was more than the $60,000 UIM coverage limit applicable to Lee's vehicle. Furthermore, Liberty Mutual maintains that the statute allows an insured—after being offered UIM coverage in the full amount of the underlying liability limits—to select a UIM coverage plan with limits less than the liability limits. As such, Liberty Mutual advances that the selection of $60,000 in coverage in the instant cause constitutes a valid rejection in writing of the offered UIM coverage limits equal to the limits of liability as long as the insurance carrier has *offered* equal limits—which it did.

[16] In *Marshall v. Universal Underwriters Ins. Co.*, 673 N.E.2d 513 (Ind. Ct. App. 1996), *reh'g denied*, *disapproved of on unrelated grounds by United Nat. Ins. Co. v. DePrizio*, 705 N.E.2d 455 (Ind. 1999), the insurer for the motorcyclist who was involved in an accident sought a declaratory judgment regarding the rights and obligations of the parties with respect to the insurer's UIM coverage plan. Defined as an issue of first impression, the *Marshall* court was asked to address—under a previous version of the statute—whether, "pursuant to I.C. [§] 27-7-5-2, an insured may elect UM/UIM coverage in limits which are less than the specified bodily injury liability limits." *Id*. at 515.

Finding the sections of the UIM coverage statute clear and unambiguous and rejecting the *Marshall* plaintiff's argument (*i.e.,* to select either no coverage at all or coverage in limits equal to or exceeding the limits specified in the liability policy), the court concluded that "[t]he plain and ordinary meaning of the statutory language establishes that 'must be provided by insurers . . . unless' requires insurers to *offer* an UM/UIM coverage plan in limits equal to the limits of liability specified in the bodily injury liability provisions. It does not limit the insured's option to either (1) no coverage, or (2) limits that are equal to or exceed the limits specified in the bodily injury liability provisions." *Id.* at 516. Therefore, the court held that "Universal was allowed to provide Marshall a [UIM] coverage plan that had limits which were less then [sic] the bodily injury limits specified in his policy so long as it has *offered* equal limits." *Id.* Applying this conclusion to the facts before it, the *Marshall* court found:

> The insurance policy issued by Universal offered Marshall the option to choose a [UM/UIM] coverage liability plan with limits equal to or greater than the minimum limits of the financial responsibility law, or in limits equal to his chosen bodily injury liability limits, or to completely reject such coverage. Therefore, Universal was in compliance with the [UM/UIM] motorist coverage statute.

> Marshall selected the plan specifying liability limits equal to the minimum limits of the financial responsibility law, specifically, limits of $25,000 per person and $50,000 per accident. Marshall selected this plan by writing an "X" in the box next to the chosen option and signing the application. This constituted a valid rejection in writing of the [UIM] motorist coverage limits equal to the limits of liability specified in the bodily injury provisions.

*Id.*

[18] Even though *Marshall* is an older precedent and the statute has been amended several times since the decision was issued, our supreme court implicitly reached a similar result in *Asklar v. Gilb*, 9 N.E.3d 165 (Ind. 2014). In *Asklar*, our supreme court remanded the cause to the trial court for consideration of whether the waiver on the election form, which was in three parts and purported to select the reduced amount of $75,000 of UIM coverage (with an underlying liability coverage of $5,000,000), was valid. *Id*. At 168. Finding that questions of material fact existed with respect to the format and the parties' intent, the court reversed summary judgment and remanded for determination of the conflicting facts by the factfinder. *Id*. The *Asklar* court's remand would be unnecessary and a waste of judicial economy and resources if the selection of a lower limit of UIM coverage could never operate as a valid rejection of the provided UIM coverage in the amount of the underlying liability limits.

[19] In support of his argument that Ind. Code § 27-7-5-2 is an all-or-nothing statute, Lee relies on *Frye v. Auto-Owners Ins. Co.,* 845 F.3d 782 (7th Cir. 2017). In *Frye*, the appellant asked the court to declare that Indiana statutory law required Auto-Owners to provide, through its commercial umbrella policy, UIM coverage in an amount equal to the policy's general liability limit of $5 million. Frye argued that Ind. Code § 27-7-5-2 obligates insurers who provide UIM coverage to make such coverage available in amounts equal to the limits of liability for bodily injury in general. He maintained that, although the umbrella policy capped Auto-Owners' UIM liability at $1 million, the statute required a

UIM liability limit equal to the policy's general per-accident limit of $5 million. *Id.* at 786. In turn, Auto-Owners argued that subsection (d)[2] permits insurers issuing commercial umbrella policies to selectively dispense with any requirements set forth in subsection (a) of the statute. In other words, Auto-Owners contended that "not only may insurance companies abstain from providing UIM coverage in the first place, but if they do provide such coverage, they may provide it in any form they choose." *Id.*

[20] In analyzing the impact of subsection (d) of the statute on subsection (a), the federal court noted that subsection (a) defined coverage as one of two possibilities: UIM protection against bodily injury and property damage or UIM protection against bodily injury only. The court explained that "[s]ubsection (a) then states that these coverages must be provided . . . in limits at least equal to the limits of liability [for] bodily injury generally. *Id.* "So the limit-of-liability requirement is modifying the 'coverage' already described; the liability requirement is not part of the description itself." *Id.* Relying on legislative history, the court stated that

> Nothing in the language of subsection (d), however, permits insurance companies—to the extent they do include UIM coverage in their commercial umbrella policies—to provide that coverage in any manner they like.

---

[2] I.C. § 27-7-5-2(d) states "An insurer is not required to make available the coverage described in subsection (a) in a commercial umbrella or excess liability policy. . ."

That the Indiana legislature did not intend such a result is further evidenced by later amendments to the same statute. Section 27-7-5-2(h), which appears in the current version of the statute, provides that insurers are not required to make available in personal (as distinguished from commercial) umbrella or excess liability policies 'the coverage described in subsection (a).' . . . But subsection (h) also states that, where an insurer does include such coverage, the insurer 'may make available the coverage in limits determined by the insurer,' and 'is not required to make available the coverage in limits equal to the limits specified in the personal umbrella or excess liability policy. We must therefore assume that the exception for commercial contracts in subsection (d)—which (still) contains no such language—grants no such permission. Otherwise, the permission explicitly afforded in subsection (h) would be redundant.

*Id*. at 787. The *Frye* court concluded that

Section 27-7-5-2(d) allowed Auto-Owners to abstain from providing UIM coverage in the umbrella policy issued to Frye's employer. Once the insurance company elected to afford such coverage, however, it was required under [I.C. §] 27-7-5-2(a) to provide that coverage in limits equal to or greater than the policy's general liability limit: $5 million.

*Id*.

[21] However, we find *Frye* to be inapposite to the case at hand and distinguishable from the facts before us. *Frye* did not involve a primary auto policy, but rather analyzed whether a UIM coverage in a commercial umbrella policy had to be provided in an amount equal to the limit of liability for bodily injury in general under the provisions of subsection (d) of the statute. Although the *Frye* court ultimately held that an insurer who elected to afford UIM coverage under a

commercial umbrella policy was required to provide that coverage in limits at least equal to the policy's general liability limit, the language of subsection (d) analyzed by the *Frye* court did not explicitly allow for liability limits to be different than UIM coverage limits in commercial umbrella policies. Moreover, in response to the *Frye* decision, our Legislature amended the language in subsection (d).

[22] Today, we reaffirm our holding in *Marshall*, concluding that after an insurer has provided UIM coverage in accordance with the liability limits, the insured may reject the UIM coverage in writing. After the coverage is rejected, the insurer may provide the insured with a UIM coverage plan with limits less than the bodily injury limits specified in the insured's policy. We determine this result to be compliant with the statutory provisions as the statute itself is silent with respect to the insurer's obligations after the insured rejects the UIM coverage provided. *See* I.C. § 27-7-5-2.

[23] However, if the insured elects UIM coverage in a primary auto policy, it cannot be for less than $50,000, even though Indiana allows bodily injury limits to be as low as $25,000. *See* I.C. §§ 27-7-5-2(a)(2); 9-24-4-5 (establishing the minimum amounts of financial responsibility). Therefore, where the insured chooses to include UIM coverage, I.C. § 27-7-5-2(a)(2) sets out two minimum coverage amounts. The first minimum applies where the insured has not rejected in writing the amount of coverage that must be "in limits at least equal to the limits of liability specified in the bodily injury liability provisions." I.C. § 27-7-5-2(a)(2). In this case, the minimum coverage amount is the bodily injury

amount. The second minimum applies where the insured rejects in writing UIM coverage equal to the bodily injury coverage. In that case, the minimum coverage amount is $50,000, even though Indiana allows bodily injury limits to be as low as $25,000. *See* I.C. § 27-7-5-2(a)(2); 9-25-4-5. *See also Vanhorn v. Progressive Ins. Co.*, 2007 WL 1376229 (N.D. Ind. May 7, 2007) ("UIM coverage is not an all-or-nothing proposition: the insured may reject the coverage that equals the bodily injury liability and may agree to be insured for less.") Accordingly, as Liberty Mutual's offered UIM coverage was $60,000, Rice's vehicle was not underinsured when the accident occurred and therefore, Liberty Mutual is not obligated to pay UIM coverage benefits to Lee.

## CONCLUSION

Based on the foregoing, we hold that the trial court properly granted summary judgment to Liberty Mutual when the policy's coverage of UIM benefits is in a lesser amount than the underlying liability coverage.

Affirmed.

Kirsch, J. and Robb, J. concur